841 F.2d 1091
 45 Ed. Law Rep. 552
 T. Dewey HARDEN, Jr., Plaintiff-Appellant,
v.
Ralph W. ADAMS, et al., Defendants,
Robert M. Paul, individually; Wyatt Grimmer, individually;
William Thornton, individually, and Marjorie
Kirkland, individually, Defendants-Appellees.
 No. 87-7268
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 April 6, 1988.
 
 J. Victor Price, Jr., Alabama Educ. Ass'n, Montgomery, Ala., for plaintiff-appellant.
 Dow T. Huskey, Johnson, Huskey, Hornsby & Etheredge, Dothan, Ala., and Richard F. Calhoun, Calhoun, Watkins & Clower, Troy, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before FAY, HATCHETT and ANDERSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 In June of 1982, Dr. T. Dewey Harden, Jr. was fired from his position as professor at Troy State University's Dotham/Fort Rucker campus. The administration organized a panel of five faculty members to review the initial decision to fire Dr. Harden. The panel conducted hearings from July 7 to July 29, which lasted for more than fifty hours and produced a transcript of more than fifteen hundred pages. The panel voted 4-1 to fire Dr. Harden.
 
 
 2
 Dr. Harden believed that the university had fired him in violation of his constitutionally guaranteed freedom of speech, and brought this 42 U.S.C. Sec. 1983 (1982) action. Previously, he actively assisted the EEOC in bringing discrimination charges against the school, and helped organize a campus chapter of the Alabama Education Association, a group devoted to representing teacher's rights, on campus. These activities, he claimed, were major reasons for his termination. Dr. Harden also sued the defendants for defamation, based on their initial accusation of sexual impropriety.[1] The trial court ruled in favor of the defendants, and Dr. Harden appealed to this court.
 
 
 3
 We find that there is sufficient evidence to support the trial court's decision, and we affirm. Based on the evidence, a reasonable factfinder could have concluded that Dr. Harden fought with faculty members who were his administrative superiors and then attempted to involve students in his disputes. There was also evidence that these disputes centered largely around matters that were not of public concern and that Dr. Harden's behavior caused disruption and disharmony among the faculty. Finally, evidence showed that Dr. Harden had been remiss in his duties as advisor to the Gamma Beta Phi fraternal organization, had not kept regular office hours, and had repeatedly violated minor rules and regulations.
 
 Sexual Impropriety Charges
 
 4
 Although we affirm the trial court's holding, we feel it necessary to discuss two points raised. The first involves the trial court's analysis of the sexual impropriety charges brought against Dr. Harden. The school initially listed Dr. Harden's sexual impropriety as one of the reasons for his dismissal; but, because there was some question about evidence sufficient to substantiate the claim, the school expressly dropped the charge prior to his termination hearing. At the termination hearing, the university presented no evidence regarding Dr. Harden's sexual conduct; and, the panel did not list sexual impropriety as one of the reasons for the discharge.
 
 
 5
 Dr. Harden's sexual conduct only became an issue in this case because Dr. Harden himself raised it by claiming defamation. The defendants answered the charge by proving that their allegations were true. They obtained and presented an affidavit from a former student of Dr. Harden's stating that she had had an affair with him. Although Dr. Harden conceded that he had slept with the student, he did not drop the claim. Instead, he insisted that his conduct had not constituted "sexual impropriety" because he had not allowed the affair to interfere with their student-teacher relationship.
 
 
 6
 Although the evidence of sexual impropriety was presented solely in connection with the libel charge, the district court considered this evidence in determining whether defendants violated Dr. Harden's first amendment rights when they fired him. The trial court noted that the Eleventh Circuit has consistently encouraged district courts to conduct de novo reviews of first amendment claims, rather than to defer to the findings of the administrative panels that initially decided to fire the claimants. See, e.g., Holley v. Seminole County School District, 755 F.2d 1492, 1501-02 (11th Cir.1985). Based on this principle, the court properly concluded that it had the authority to consider all evidence relating to Dr. Harden's first amendment claim. However, the trial court improperly determined that Holley also authorized it to conduct a de novo review into Dr. Harden's fitness to teach. The district court stated that evidence of sexual misconduct, though not considered at the administrative hearing, was relevant because: (a) it showed that Dr. Harden was unfit to be a professor; and (b) it rendered any error committed by defendants harmless.
 
 
 7
 While we agree with the district court that sexual misconduct with students renders one unfit to serve as a teacher, considering this evidence while reviewing the "termination" is a misapplication of the legal principle discussed in Holley. Holley states that de novo review is appropriate because a facially constitutional termination hearing can exist even when the termination actually occurred for an unconstitutional reason. Thus, when a plaintiff argues that " 'an unconstitutional result [was] reached despite procedural ... regularity and substantial evidence to support [the Board's] conclusion,' " the court may look beyond the record in investigating the truth of the claim. Holley, 755 F.2d at 1502 (quoting Professional Association of College Educators v. El Paso County Community College District, 730 F.2d 258, 264 n. 9 (5th Cir.), cert. denied, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984). The district court, read this case, which authorizes courts to conduct de novo reviews of the decision-making process to guarantee that there were no constitutional violations, as one that authorized courts to reevaluate a teacher's fitness to teach whenever that teacher claims that he or she was fired for exercising free speech rights.
 
 
 8
 We disagree with the district court's interpretation. Newly uncovered evidence regarding the claimant's earlier conduct can never serve as a basis for the "real reason" that a board fired a professor, and so is entirely irrelevant on that issue. Therefore, the district court should not have considered this evidence in reviewing the termination.
 
 Mt. Healthy Issue
 
 9
 The first time the Eleventh Circuit considered this case, it found that "[t]he district court erred in concluding that the Mt. Healthy doctrine controlled."[2] Harden v. Adams, 760 F.2d 1158, 1165 (11th Cir.), cert. denied, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985). We stated: "First, that doctrine is narrower than the district court's opinion suggests.... Second, Mt. Healthy is distinguishable from the instant case in that the appellant there did not have tenure, a fact on which the Court explicitly relied in reaching its decision." Id. The district court interpreted this to mean that the Mt. Healthy test does not apply to tenured teachers. On remand, the trial judge first expressed his disagreement with the circuit panel, and then stated that he did not know what standard to apply instead of Mt. Healthy.
 
 
 10
 We would like to clarify the issue. The district court was correct in stating that Mt. Healthy applies regardless of whether a teacher has tenure. See, e.g., Holley, 755 F.2d at 1500 (applying Mt. Healthy test to evaluate tenured teacher's claim).
 
 
 11
 The circuit panel had also recognized this. See Harden, 760 F.2d at 1165 ("[R]eliance on impermissible factors does not, in and of itself, render a termination decision unconstitutional, if there were other, permissible reasons for the termination which were sufficient to support the decision.") (citing Mt. Healthy Board of Education v. Doyle, 429 U.S. 274, 285-86, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977)).
 
 
 12
 We believe that the earlier panel had simply meant that the district court had misapplied Mt. Healthy by failing to apply it correctly in light of Dr. Harden's tenured status. When a teacher is tenured, "a university [must] make a considerably stronger showing than the appellees did in Mt. Healthy " to justify dismissal. Harden, 760 F.2d at 1165. Such was done here.
 
 Conclusion
 
 13
 The trial court rendered a lengthy and detailed analysis of this matter. Except for the minor instances discussed above, we find the record amply supports the conclusions reached for the reasons stated.
 
 
 14
 The judgment is AFFIRMED.
 
 
 
 [1]
 Harden also alleged that the university had denied him procedural due process by organizing a biased committee determined to uphold the initial decision to fire him; and, he asserted that the administration had decided to fire him regardless of the panel's findings. However, we find that there is sufficient evidence to support the trial court's determination that Harden received a fair hearing
 
 
 [2]
 In Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977), the Supreme Court reasoned that a teacher should not be able to "prevent his employer from ... reaching a decision not to rehire him based on [his performance] record, simply because the protected [conduct] makes the employer more certain of his decision." Therefore, if an employer would have fired the employee anyway, the employer's decision will not be reversed based on the employee's exercise of his or her first amendment rights