Nancy Brown SUBER, Plaintiff,

v.

BULLOCH COUNTY BOARD OF EDU-CATION, and Dr. Henry J. Proctor, Dr. Harry S. Carter, Charles Finch, Robert Rushing, Janna C. Taulbee, Donnie Simmons, J.R. Williams, and in their official capacity as members of the Bulloch County Board of Education, Thomas F. Bigwood, in his official capacity as an employee of the Bulloch County Board of Education, Dr. Edwin L. Wynn, in his official capacity as an employee of the Bulloch County Board of Education, Fred Shaver, in his official capacity as an employee of the Bulloch County Board of Education, William Locklear, in his official capacity as an employee of the Bulloch County Board of Education, Charles H. Brown, in his official capacity as former Chairman of the Bulloch County Board of Education, Defendants.

Civ. A. No. CV687–154.

United States District Court,
S.D. Georgia,
Statesboro Division.

Aug. 4, 1989.

---

Theron M. Moore, Perry, Ga., and Jon Gary Branan and Rowe Brogdon, Claxton, Ga., for plaintiff.

Kran Riddle and Stanley M. Karsman, Savannah, Ga., and Vanderver R. Pool, Turner & Pool, Statesboro, Ga., for defendants.

## ORDER

BOWEN, District Judge.

Before the Court are defendants' motion for summary judgment and plaintiff's motion to strike certain portions of various affidavits submitted in support of defendants' motion. Plaintiff's fourteen-count complaint alleges that defendants violated her constitutional rights, and various state and federal laws prohibiting certain forms of discrimination. Plaintiff seeks money damages, attorney's fees, and a declaration that defendants violated her rights. All defendants have moved for summary judgment as to each remaining count[1] of the complaint.

## FACTS

Plaintiff, a white female, is a former school teacher who taught in the Bulloch County school system for twenty-three years. Defendants are the Bulloch County Board of Education (the "Board"), all current[2] members of the Board and its former chairman, along with various employees of the Bulloch County School System. These employees are the superintendent, Dr. Wynn; the assistant superintendent, Mr. Shaver; the principal at the school where plaintiff last taught, Mr. Bigwood; and the assistant principal at that school, Mr. Locklear. All individual defendants are sued only in their official capacity.

Plaintiff was a teacher at Southeast Bulloch High from 1983 to 1987. During this period plaintiff filed, and assisted others in filing, complaints with the United States Department of Education's Office of Civil Rights ("OCR"). These complaints asserted that the Board was discriminating against students on the basis of race.

In March, 1986, plaintiff received a so-called Global Teacher Evaluation of her performance. See Exhibit A. Global Evaluations are given annually by the school principal to each of his teachers. The Evaluations contain the principal's evaluation of the teacher's performance during the previous year, along with areas of her job performance which need improvements. Plaintiff's 1986 evaluation also contained certain directives which ordered plaintiff not to discuss or otherwise involve herself in problems between students and other

---

1. Count 5 of the complaint was dismissed by previous order of the Court.

2. Defendants were "current" members of the Board as of the time the instant suit was filed.

members of the faculty or the administration.

After receiving this evaluation, plaintiff filed a complaint with the OCR alleging that the directives in her evaluation were given in retaliation for her previous involvement in the filing of complaints with the OCR. The OCR investigated these complaints but found no violations of federal law.

At the beginning of each year, the principals at each school in the Bulloch County School System recommend to the superintendent whether the contracts for each teacher in their school should be renewed. The superintendent then independently recommends to the Board whether these contracts should be renewed.

In February, 1987, Mr. Bigwood recommended to Dr. Wynn, and Dr. Wynn recommended to the Board, that plaintiff's contract for the 1987–1988 school year not be renewed. The Board accepted the recommendation. The Board received no input from anyone other than Dr. Wynn concerning the recommendation that plaintiff's contract not be renewed, and Dr. Wynn did not give the Board the reasons for his recommendation.

Plaintiff was notified of the Board's decision by certified mail on or about February 27, 1987. Plaintiff requested a hearing before the Board concerning the nonrenewal of her contract, and a hearing was scheduled for June 8, 1987. However, plaintiff subsequently waived this hearing and instead filed the instant suit.

Up to this point the record in this case is, at best, somewhat jumbled. To try and restore some order to the proceedings, I am setting out a map of the structure of this order. I will first rule on plaintiff's motion to strike. Then I will address defendants' motion for summary judgment as to each count of the complaint. Because of the great overlap in the evidence and the duplicative nature of many of the counts, deciding defendants' motion in this manner will no doubt result in a much longer order which contains some repetitious analysis. However, such is necessary to dispose of the pending motions in an orderly fashion.

## ANALYSIS

Plaintiff, in opposing defendants' motion, moved to strike certain paragraphs of the affidavits of defendants Wynn, Shaver and Bigwood. Plaintiff argues that certain portions of these affidavits, submitted in support of the motion for summary judgment, are not competent evidence because they are conclusory, based on hearsay, or are outside the personal knowledge of the affiants.[3] According to plaintiff, defendants' motion for summary judgment cannot be granted on the material contained in these portions of the affidavits of Wynn, Shaver and Bigwood. *See* Fed.R.Civ.P. 56.

I have reviewed in detail each affidavit which plaintiff asserts contains matter which should be stricken. Much of the material about which plaintiff complains is testimony by the affiants as to the reasons why the affiant took a particular action. Certainly this testimony cannot be said to be outside the personal knowledge of the affiant or hearsay.

While I agree with plaintiff that certain portions of the affidavits of defendants Wynn, Shaver and Bigwood contain rambling and self-serving statements, I see very little, if any, material that is not competent evidence. My ruling on defendants' motion is not based upon evidence that is inadmissible or is not competent. *See* Fed.R.Civ.P. 56(e).

Summary judgment should be granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. Once a party shows, in the manner provided by the rule, that there is no genuine issue of material fact, the opposing party may not rest upon his pleadings, but must instead "set forth specific facts showing that there is a genuine issue

---

**3.** Plaintiff also complains that much of the testimony in these affidavits is self-serving. However, I suspect that most testimony given by a party in support of his position will be self-serving. Furthermore, the Federal Rules of Evidence do not prohibit the admission of evidence simply because it is self-serving.

for trial." *Id.* Such a showing should be made by depositions, affidavits, admissions and answers to interrogatories. *Id.* With this in mind, I will now rule on defendants' motion.[4]

Count One of the complaint alleges that plaintiff was deprived of her right to procedural due process. Plaintiff claims that she had a property interest in remaining a teacher in Bulloch County, and the Board's failing to renew her contract deprived her of this property without due process of law.

The Bulloch County Board of Education could not fail to renew plaintiff's teaching contract, except for cause. O.C.G.A. § 20–2–942 (1987). Thus, plaintiff had a property interest in having her contract renewed, and the Board, in refusing to renew plaintiff's contract, must have complied with minimum standards of due process. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The process to which plaintiff was entitled "contains both a procedural and substantive component." *Holley v. Seminole County School District,* 755 F.2d 1492, 1496 (11th Cir.1985). The procedure by which the Board failed to renew plaintiff's contract must have comported with due process requirements, and if so, the Board's action must have been supported by substantial evidence. *Id.*

■ The procedures followed by the Board in failing to renew plaintiff's contract are those set out in the Georgia Fair Dismissal Law, O.C.G.A. § 20–2–940 *et seq.* These procedures meet due process requirements. *Holley,* 755 F.2d at 1497. Therefore, the only question is whether these procedures, as applied to plaintiff, meet minimum standards of due process.

It is undisputed that the Board followed the procedures set out in the Georgia Fair Dismissal Law. In waiving her right to a hearing before the Board, plaintiff agreed that the Board had in fact followed these procedures. However, plaintiff argues (indirectly) that she was denied her right to due process because the Board was not an impartial decisionmaker. *See Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.1970).

A plaintiff who complains that a decisionmaker was not impartial must show actual bias on the part of the decisionmaker such that the decisionmaker is incapable of judging the dispute fairly. *See Hortonville School District v. Hortonville Education Association,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). This bias may be personal or official. *Id.* Official bias exists where there is a conflict of interest between the parties. *Id.* Personal bias exists when the decisionmaker may harbor personal animosity toward the plaintiff. *E.g., Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).

In the case at bar, plaintiff complains that the Board was incapable of fairly determining whether to renew her teaching contract because a new teacher had already been hired to teach plaintiff's classes. However, the Court in *Holley* specifically rejected this exact argument. *Holley,* 755 F.2d at 1499. Furthermore, the fact that the Board was aware that she had filed complaints with the OCR against the Bulloch County School System did not render the Board so impartial as to deny plaintiff her right to due process. "Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role" does not disqualify that agency from deciding a case. *Hortonville,* 426 U.S. at 493, 96 S.Ct. at 2314. Thus, there was no official bias on the part of the Board.

Plaintiff also contends that defendants displayed personal animosity towards her because the school custodian told her that "someone" in "the office" referred to her as a "bitch." She does not know who made this reference or when it was made. This evidence does not show that these defen-

---

**4.** In her brief in opposition to defendants' motion, plaintiff only argues against granting summary judgment on her first amendment claims. Plaintiff also did not oppose defendants' previous motion to dismiss (or defendants' motion to amend their answer or defendants' motion to compel discovery). While I understand that a party may, after filing a complaint, decide not to pursue each claim contained therein, notifying the Court and/or opposing counsel of such a decision would conserve judicial resources.

dants were so hostile towards plaintiff that they were incapable of acting impartially towards her. *Compare Mayberry,* 400 U.S. at 456–461, 91 S.Ct. at 500–503. Plaintiff has therefore presented no evidence that these defendants were so biased towards plaintiff as to be incapable of judging her fairly.

■ The final component of plaintiff's due process claim is whether there was substantial evidence to support defendants' actions. Defendants informed plaintiff that the reasons for their actions were plaintiff's insubordination and willful neglect of duty, in addition to "other good and sufficient cause." Each of these reasons is a "cause" for which defendants could refuse to renew plaintiff's contract. O.C.G.A. § 20–2–940(a). Furthermore, the affidavits proffered in support of defendants' motion contain substantial evidence to support these charges. Consequently, there was substantial evidence to support the defendants' actions, and defendants did not violate standards of federal due process in failing to renew plaintiff's teaching contract. Defendants are therefore entitled to summary judgment on Count One.

Plaintiff styled Count Two of her complaint "federal action for violation of substantive due process." It is difficult to determine how plaintiff contends she was deprived of her substantive due process rights. Since plaintiff's brief in opposition to defendants' motion neither clarifies nor makes arguments in support of this count, I will interpret the allegations in this count as broadly as possible.

In Count Two plaintiff alleges that she had a liberty and property interest in her teaching position and that she has a right to freedom of contract, all of which she was deprived in violation of her right to due process. To the extent that this count alleges a deprivation of property without procedural due process, my disposition of Count One shows that plaintiff cannot recover for a claim of deprivation of property without due process.

■ Likewise, plaintiff cannot recover for any alleged deprivation of her liberty interest. She has neither alleged nor presented evidence which shows that she was in any way stigmatized during the nonrenewal process. *See Kelleher v. Flawn,* 761 F.2d 1079 (5th Cir.1985). Nonrenewal of a teacher's employment contract, without more, is not a deprivation of a liberty interest. *Id.* Further, defendants' actions did not foreclose any employment opportunities for plaintiff in other school systems. Any reduction in plaintiff's "attractiveness" as a teacher to other potential employers is also not a deprivation of a liberty interest. *Perry v. FBI,* 781 F.2d 1294 (7th Cir.1986), *cert. denied,* 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25.

The last claim which I can sift from the allegations in Count Two of the complaint is that plaintiff claims that the defendants' actions were so irrational and arbitrary as to be unconstitutional no matter what process she received. *Illinois Psychological Association v. Falk,* 818 F.2d 1337 (7th Cir.1987). This claim is untenable. As I mentioned previously, there was substantial evidence to support the actions taken against plaintiff. Thus, defendants are entitled to summary judgment on Count Two.[5]

■ In Count Three of her complaint plaintiff alleges that she was discriminated against on the basis of sex in violation of her right to equal protection. Defendants argue that plaintiff's section 1983 claim for sex discrimination has been preempted by Title VII. However, the established law of this circuit is that a plaintiff may assert a claim for employment discrimination pursuant to both section 1983 and Title VII. *See Stallworth v. Shuler,* 777 F.2d 1431 (11th Cir.1985); *Whiting v. Jackson State University,* 616 F.2d 116 (5th Cir.1980).

---

**5.** Defendants argue that the "findings" of good cause by the Board should be preclusive. *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). However, the Board never made such findings. Justice Stevens' prediction that litigants will sue in federal court without exhausting administrative remedies if unreviewed factual findings of state agencies are given preclusive effect, has apparently come true. *Id.* at 801, 106 S.Ct. at 3227 (Stevens, J., concurring in part and dissenting in part).

Furthermore, Congress did not intend for Title VII to preempt remedies for employment discrimination which existed prior to its passage. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147 (1974) ("... Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination."); *see also Johnson v. Ballard,* 644 F.Supp. 333 (N.D.Ga.1986) and the cases cited therein. Since an action for employment discrimination pursuant to section 1983 was available to litigants prior to the passage of Title VII, defendants' contention that Title VII preempts employment discrimination claims under section 1983 is without merit.

▇▇ To succeed on her section 1983 claim for employment discrimination, plaintiff must show that defendants intentionally discriminated against her. *E.g., Shuler,* 777 F.2d at 1433. Defendants have produced evidence that they did not intentionally discriminate against plaintiff on the basis of sex.[6] But rather than produce evidence which shows that defendants did intentionally discriminate against her, plaintiff has merely questioned the credibility of the defendants who testified. This is not sufficient to defeat defendants' properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Thus, defendants are entitled to summary judgment on Count Three.

In Count Four of her complaint, plaintiff alleges that the Board, a federally funded educational program, discriminated against plaintiff on the basis of sex in violation of 20 U.S.C. § 1681 (1978). Defendants advance numerous arguments as to why they are entitled to summary judgment on this count. However, I need not address all of defendants' arguments because section 1681 only proscribes discrimination "on the basis of sex." 20 U.S.C. § 1681(a).

As I stated in my analysis of Count Three of the complaint, defendants have shown that none of their actions against plaintiff were based on plaintiff's sex. *See* note 6, supra. Plaintiff has not produced any evidence that any of defendants' actions were based on plaintiff's sex. Accordingly, defendants are entitled to summary judgment on Count Four. *See Anderson,* 477 U.S. 242, 106 S.Ct. 2505.

In Count Six[7] of the complaint, plaintiff alleges that she was discriminated against in violation of the Age Discrimination Act, 42 U.S.C. § 6101 *et seq.* This Act contains certain procedural prerequisites with which a party must comply before bringing suit in district court. By previous order of the Court, plaintiff was ordered to either furnish evidence of such compliance or face dismissal of Count Six. Not surprisingly,[8] plaintiff did not furnish such evidence. Accordingly, Count Six is DISMISSED.

Count Seven of the complaint is a claim for breach of contract. However, this claim is contrary to the facts of this case. Plaintiff signed a teaching contract with the Board for the 1986–1987 school year. Plaintiff taught for the entire 1986–1987 school year. Plaintiff does not allege which contract provision was breached, and the record before me shows that none were breached. To the extent that Count Seven alleges that the Board did not comply with the applicable Georgia law in refusing to renew plaintiff's contract, my rulings on plaintiff's due process claims are dispositive. Defendants are therefore entitled to summary judgment on Count Seven.

▇▇ In Count Eight of the complaint plaintiff alleges that defendants tortiously interfered with her contractual relations. *See* O.C.G.A. § 51–9–1 (1982). Intentional,

---

**6.** The individual defendants deny that plaintiff's sex played any part in any action taken against her. The chairman of the Board of Education denies that plaintiff's sex played any role in the Board's decision not to renew her contract. Finally, defendants have shown that approximately two-thirds of the high-school teachers in the Bulloch County school system are female.

**7.** Count Five was dismissed by a previous order of the Court.

**8.** See note 4, supra.

non-privileged interference, by a third party, with another's contractual rights and relations is actionable under Georgia law. *McDaniel v. Green*, 156 Ga.App. 549, 275 S.E.2d 124 (1980).

■ However, plaintiff's contract was with the Bulloch County Board of Education. Hence, neither the Board nor its members, who were sued only in their official capacities, are "third parties" to plaintiff's contract. *E.g., Morast v. Lance*, 807 F.2d 926 (11th Cir.1987). Thus, they cannot be liable for tortious interference with plaintiff's contractual relations.

Furthermore, the remaining defendants were also sued only in their official capacities. At all times pertinent to plaintiff's claim these defendants were acting as agents of the Board in furtherance of their official duties. Therefore, these defendants are also not third parties to plaintiff's teaching contract. *See Henson v. American Family Corporation*, 171 Ga. App. 724, 321 S.E.2d 205 (1984); *see also Rhine v. Sanders*, 100 Ga.App. 68, 110 S.E.2d 128 (1959). Plaintiff has no cause of action for tortious interference with contractual relations against the named defendants. Thus, defendants are entitled to summary judgment on Count Eight.

Plaintiff alleges in Count Nine that she has been discriminated against on the basis of sex in violation of O.C.G.A. § 20–3–316 and the equal protection clause of the Georgia constitution. I am at a loss to determine how O.C.G.A. § 20–3–316, which establishes the rights and duties of the state agency responsible for administering the state student loan program for post secondary education, gives rise to a cause of action for sex discrimination against the Bulloch County Board of Education. And since plaintiff has not enlightened me as to the basis of her claim, I must conclude that O.C.G.A. § 20–3–316 is inapposite. It does not support the cause of action which plaintiff asserts.

In Count Nine plaintiff also alleges that she was denied equal protection under the law in violation of the Georgia Constitu-tion. The equal protection clause of the Georgia Constitution is "substantially equivalent" to the equal protection clause of the fourteenth amendment. *McDaniel v. Thomas*, 248 Ga. 632, 638, 285 S.E.2d 156, 161 (1981). Thus, plaintiff must show that she was intentionally discriminated against on the basis of sex in order to recover on her equal protection claim. *E.g., E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988).

As I discussed in the section of this order disposing of plaintiff's federal equal protection claim, defendants have presented evidence which shows that they did not intentionally discriminate against plaintiff. Conversely, plaintiff has presented no evidence that defendants did discriminate against her because of her sex. Thus, defendants are entitled to summary judgment on Count Nine.

■ In Count Ten of the complaint plaintiff alleges that she was discriminated against on the basis of age in violation of O.C.G.A. §§ 20–3–316 and 34–1–2 and the Georgia Constitution. As I stated in the analysis of Count Nine, O.C.G.A. § 20–3–316 is irrelevant to plaintiff's claims. Furthermore, O.C.G.A. § 34–1–2 is a penal statute and creates no private cause of action. *Calhoun v. Federal National Mortgage Association*, 823 F.2d 451 (11th Cir.1987), *cert. denied*, 484 U.S. 1078, 108 S.Ct. 1058, 98 L.Ed.2d 1019 (1988). *Calhoun* specifically held that O.C.G.A. § 34–1–2 creates no private cause of action. *Id.* at 455.

Plaintiff's claim that defendants violated her state constitutional rights by discriminating against her on the basis of age also must fail. As discussed earlier, to recover on this claim, plaintiff must show that she was intentionally discriminated against. However, plaintiff has produced no evidence that defendants at any time took her age into account, while defendants have produced evidence that plaintiff's age played no part in any of their actions. Defendants are therefore entitled to summary

judgment on Count Ten.[9]

■ In Count Eleven plaintiff alleges that defendants violated her right to due process under the Georgia Constitution. The due process clause of the Georgia Constitution, while mirroring the language of the due process clause of the fourteenth amendment, affords greater protection than does federal due process. *Fields v. Rockdale County, Georgia,* 785 F.2d 1558, 1561 (11th Cir.1986), *cert. denied,* 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 575, citing *Barrett v. Hamby,* 235 Ga. 262, 219 S.E.2d 399 (1975).

■ The higher due process standard imposed by the due process clause of the Georgia Constitution requires that a defendant present "sufficient justification" for its decisions. *Barrett,* 235 Ga. at 266, 219 S.E.2d at 402.[10] Defendants, however, have met this burden. As I indicated in my discussion of Count One, defendants have presented "substantial evidence" to justify their actions. Since it is undisputed that defendants followed all procedural requirements imposed by Georgia law, plaintiff's claim that she was deprived of her right to due process in violation of the Georgia constitution is without merit. Defendants are entitled to summary judgment on Count Eleven.

Count Twelve of the complaint is styled "Pendent State Law Action for Deprivation of Substantive Due Process." The count actually alleges a violation of federal due process rights. However, as pointed out numerous times in this order, there is substantial evidence to support defendants' action. Therefore, defendants' actions cannot be said to be so totally irrational as to violate either plaintiff's state or federal substantive due process rights, and defendants are entitled to summary judgment on Count Twelve.

In Count Thirteen of the complaint plaintiff alleges that she has been deprived of her right to free speech, while Count Fourteen is a claim for intentional infliction of emotional distress. Because plaintiff's claim for intentional infliction of emotional distress can be disposed of rather quickly, I will resolve Count Fourteen before resolving Count Thirteen.

■ To constitute intentional infliction of emotional distress, a defendant's actions must be "so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." *Georgia Power Co. v. Johnson,* 155 Ga.App. 862, 863, 274 S.E.2d 17, 18 (1980). Plaintiff has not identified which particular actions she contends are tortious. However, defendants' actions, viewed in the light most favorable to plaintiff, constitute no more than the termination of plaintiff for an improper purpose. This conduct cannot reasonably be characterized as so terrifying or insulting as to naturally humiliate, embarrass or frighten plaintiff. *See id.; see also Anderberg v. Georgia Electric Membership Corporation,* 175 Ga.App. 14, 332 S.E.2d 326 (1985); *Sossenko v. Michelin Tire Corp.,* 172 Ga. App. 771, 324 S.E.2d 593 (1984); *Thomas v. Ronald A. Edwards Construction Co.,* 163 Ga.App. 202, 293 S.E.3d 383 (1982); *Young v. Colonial Oil Co.,* 451 F.Supp. 360 (M.D. Ga.1978). Thus, defendants' conduct cannot constitute intentional infliction of emotional distress, and defendants are entitled to summary judgment on Count Fourteen.

In Count Thirteen plaintiff claims that she has been deprived of and retaliated against for the exercise of her first amendment right to free speech. She alleges that she was retaliated against for filing complaints with the Department of Education's Office of Civil Rights (OCR), and that de-

---

**9.** Defendants argued that plaintiff's equal protection rights were not violated because no statutory classification is involved. However, isolated incidents which do not involve a statutory classification may also result in the violation of a party's right to equal protection. *See E & T Realty,* 830 F.2d 1107; *Smith v. State of Georgia,* 684 F.2d 729 (11th Cir.1982); *Gamza v. Aguirre,* 619 F.2d 449 (5th Cir.1980).

**10.** This higher standard has only been applied to zoning decisions. I am not sure that the reasoning supporting those decisions would require that this higher standard also be applied to other due process claims. However, neither party briefed this issue, and my resolution of this claim makes it unnecessary for me to decide this issue.

fendant Bigwood gave her directives which deprived her of her right to freedom of speech.

Plaintiff claims that a memo from Mr. Bigwood dated June 6, 1984, prevented her from exercising her right to free speech. However, this lawsuit was filed in December, 1987. Defendants amended their answer [11] to assert as a defense the statute of limitations. The Georgia statute of limitations for personal injury actions is two years. O.C.G.A. § 9–3–33. Thus, plaintiff's claim for injuries arising from the June 6, 1984, memo is time-barred. *See, Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

Plaintiff also contends that directives given to her in her 1986 "Global Evaluation" and in a memo to her in April, 1986, deprived her of her right to freedom of speech. She also claims that her contract was not recommended for renewal because she filed, and assisted others in filing, OCR complaints. In order for plaintiff's claim to succeed, she must show that her speech was protected under the Constitution, and that her speech was a substantial motivating factor in defendants' conduct. *E.g., Eiland v. City of Montgomery*, 797 F.2d 953 (11th Cir.1986), cert. denied 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). Once plaintiff makes such a showing, the burden of proof then shifts to the defendants to justify their actions. *Id.*

▆▆▆ To be protected by the first amendment, a public employee's statements must relate to a matter of public concern; that is, to a matter of political, social or other concern to the community. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Kurtz v. Vickrey*, 855 F.2d 723 (11th Cir.1988). Whether such speech relates to a matter of public concern is determined as a matter of law, based upon the content, form and context of the statement. *Connick*, 461 U.S. at 147, 148, 103 S.Ct. at 1690, 1691; *Kurtz*, 855 F.2d at 727; *Ferrara v. Mills*, 781 F.2d 1508, 1515 (11th Cir.1986).

▆▆▆ Plaintiff has the burden of showing that her speech involved matters of public concern. *Ferrara*, 781 F.2d at 1514. Clearly, she has failed to meet this burden. The 1986 Global Evaluation, attached to this order as Appendix "A", and the April, 1986, memo, attached to this order as Appendix "B", directed plaintiff not to discuss with students problems which plaintiff had with other teachers and administrators. The directives also instructed plaintiff not to involve herself in problems which students had with other teachers and administrators.

The content of such speech is clearly personal, either to plaintiff or to the particular student into whose private affairs plaintiff sought to thrust herself. Moreover, plaintiff's deposition indicates that plaintiff, in talking to other students about their conversations with faculty members, was either trying to find out what other faculty members were saying about her or collecting information which she might later need for her lawsuit. Thus, the content of the speech prohibited by the directives involve no matters of public concern.

Furthermore, these directives were given to plaintiff after principal Bigwood had met with plaintiff and discussed what the directives were intended to do. In this context, I have no difficulty concluding that the situation between plaintiff and the school administration was such that the context of the speech prohibited by the directives show that this speech was not intended to involve matters of public concern. *See Kurtz*, 855 F.2d 723; *see also Harden v. Adams*, 841 F.2d 1091 (11th Cir.1988).

Plaintiff also claims that she was harassed and her contract was not renewed because of her exercise of her right to free speech. The only evidence of exactly what statements plaintiff claims were protected is in plaintiff's deposition. In her deposition, plaintiff states that she would often ask various students about private meetings between that student and a member of the school administration or faculty. She also states that she quoted to her students

---

**11.** Plaintiff did not oppose the motion to amend the answer.

the directives that she received in the Global Evaluation and the April, 1986, memo, and that she discussed with students her disagreements with Mr. Bigwood. Lastly, she states that she would contact the parents of students who had been disciplined and tell them that she thought the discipline received by the student was unfair.

All of the speech set out above concerned matters of personal disagreement between plaintiff and the school administration. As such, the speech's content involved no matters of public concern. *Id.* Moreover, the context in which this speech occurred shows that plaintiff's speech was not motivated by a desire to inform the public on matters of public concern. *See Connick,* 461 U.S. at 147, 103 S.Ct. at 1690; *Ferrara,* 781 F.2d at 1515. After receiving the directives, plaintiff began sending students to the principal's office with questions about their homework, make-up tests and so forth, under the pretense that she could no longer speak to the students. Also, she never brought her problems to the attention of the school board or the local PTA. Instead, she told them to her students. Considering these facts, together with the strained relationship between plaintiff and the school administration, I conclude that the context and form of plaintiff's speech also show that the speech was not related to matters of public concern, and was therefore not protected under the First Amendment. Hence, no unfavorable job action taken against plaintiff as a result of this speech can form the basis of a claim that she was retaliated against in violation of the First Amendment. On the contrary, it appears that plaintiff was engaged in puerile and unprofessional retaliation against legitimate directives which she alone perceived as improper.

■ The final way in which plaintiff claims she was deprived of her right to free speech is her contention that her contract was not renewed because of complaints she filed with the OCR. Speaking out on perceived discrimination in public schools is clearly protected by the first amendment. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

Although plaintiff's speaking out against perceived discrimination is protected under the First Amendment, plaintiff cannot recover for actions taken against her in retaliation for her "speaking out" unless the balancing test of *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) is resolved in her favor. *Kurtz,* 855 F.2d at 730–731. Under the *Pickering* test the Court must balance the plaintiff's interest in "speaking out" against the interest of the government "in promoting the efficiency of the public services it performs through its employees." *Id.* at 730.

In order for this balance to be struck in favor of the government, plaintiff's speech must have either impeded her in properly performing her daily teaching duties or interfered with the operation of the school generally. *See Pickering,* 391 U.S. at 572–573, 88 S.Ct. at 1736–1737. Defendants have presented no evidence that plaintiff's filing OCR complaints either impeded her performance as a teacher or interfered with the operation of the school generally. Furthermore, citizens have a strong interest in speaking out when they see discrimination occurring. *See Givhan,* 439 U.S. 410, 99 S.Ct. 693. Accordingly, I conclude that the *Pickering* balancing test must be struck in favor of plaintiff.

The final step in the analysis is determining whether plaintiff's contract would not have been renewed notwithstanding her OCR activity.

In support of their motion defendants have presented affidavits stating that plaintiff's filing OCR complaints was not a factor in any action taken against plaintiff. Plaintiff has countered with the deposition testimony of defendant Simmons, who was a member of the Board at the time the decision not to renew plaintiff's contract was made.[12] Mr. Simmons states that in

---

12. Plaintiff originally presented this evidence by way of unsupported statements in her brief and submitted the deposition only after ordered to do so. Plaintiff's brief in opposition to the motion for summary judgment also makes numerous other factual assertions which are not

his opinion, plaintiff's filing complaints with the OCR was "ninety-five percent" of the reason why plaintiff's contract was not renewed.

It is undisputed that when the recommendation of non-renewal was made to the Board, no reasons for the recommendation were given. Therefore, defendants argue that any statements by Mr. Simmons as to why the recommendation of non-renewal was made would be outside of Mr. Simmons' personal knowledge.

However, a reasonable jury could infer that defendants Wynn, Shaver, Bigwood and Locklear may have communicated their reasons for recommending plaintiff's contract not be renewed through some "off-the-record" conversations. A close working relationship undoubtedly exists between the school superintendent, the assistant superintendent, a school principal and assistant principal, and the Board of Education for the county where they are employed. Furthermore, I find it interesting that the Board would blindly and without any supporting proof accept a recommendation that a tenured teacher's contract not be renewed. This is particularly true where the superintendent who made the recommendation states that recommending a tenured teacher's contract not be renewed is "extremely rare" and had happened only one other time during the previous eight years. *See* Wynn Affidavit, ¶ 3. Considering all the circumstances of this case, a reasonable jury could infer that defendants Wynn, Shaver, Bigwood and Locklear did express to the Board their reasons for recommending that plaintiff's contract not be renewed.

Additionally, Mr. Simmons, as a member of the Board, should have personal knowledge as to why the Board voted not to renew plaintiff's contract. Defendants' contention that Mr. Simmons had no personal knowledge as to why the Board voted not to renew plaintiff's contract goes to his credibility and the weight of his testimony. His testimony is sufficient to create a question of fact as to whether plaintiff's filing OCR complaints was a motivating factor in the Board's decision not to renew plaintiff's contract.

Defendants contend that even if Mr. Simmons' testimony does create an issue of fact, they are still entitled to summary judgment on this claim for two reasons. First, defendants contend that plaintiff's complaint did not allege that she was terminated for filing complaints with the OCR. Next, defendants contend that Mr. Simmons' testimony is inadmissible.

Defendants' contention that plaintiff did not sufficiently plead that she was terminated in retaliation for filing OCR complaints is without merit. Even a cursory reading of the complaint gives notice that plaintiff is making such a claim. I find it interesting that in their affidavits defendants Bigwood, Wynn and Shaver all deny that plaintiff's OCR complaints played any part in their actions toward plaintiff, yet defendants now argue that the complaint did not give them sufficient notice of this claim to enable them to defend against it.

Defendants' contention that Simmons' testimony is inadmissible is also without merit. Defendants correctly state the legal proposition that the testimony of a legislator as to the legislative intent of a statute is inadmissible. However, defendants do not argue, nor do I see, how this proposition renders inadmissible the testimony of Mr. Simmons. Defendants' contentions that plaintiff did not sufficiently plead that she was fired for her OCR involvement, and that defendant Simmons' testimony as to why the Board did not renew plaintiff's contract, are without merit.

Once the plaintiff has shown that she was engaged in protected activity and that this activity was a substantial or motivating factor in defendants' decision, the burden of proof shifts to defendants to justify the decision. *E.g., Ferrara,* 781 F.2d at 1512. This phase of the analysis necessarily involves factual determinations, and whether plaintiff would have been termi-

supported by any evidence in the record. As Rule 56 and my previous order make clear, only evidence which is part of the record may be relied upon in ruling on a motion for summary judgment.

nated notwithstanding her involvement with the OCR is thus not appropriate for summary judgment.

## CONCLUSION

Plaintiff's motion to strike is DENIED. Additionally, Count Six of the complaint is DISMISSED due to plaintiff's failure to comply with an earlier order of the Court. Defendants' motion for summary judgment is GRANTED as to all remaining counts except Count Thirteen. However, the motion for summary judgment on Count Thirteen is DENIED.

ORDER ENTERED.

## APPENDIX A

### SOUTHEAST BULLOCH
### HIGH SCHOOL
### ANNUAL
### GLOBAL TEACHER EVALUATION

#### 1985–86

Nancy Suber
TEACHER
English–Spanish Teacher
PRESENT ASSIGNMENT

You have demonstrated satisfactory performance on all of the minimum competencies.

Particular strengths include:

(1) Organization for instruction.

(2) The physical environment of your classroom is attractive.

(3) Assessment of learner progress during the lesson.

(4) Personalization of lesson, particularly Spanish clases.

Although your performance is satisfactory and above in all competencies, the following areas need improvement.

(1) Express learner objectives for lesson at the outset of instruction.

(2) Plan instruction to provide extra help for learners that have difficulty obtaining objectives.

Through observations and other communication I find that, overall, your relationship with students has been satisfactory. There have been behavior problems on occasion that are of concern; however, overall classroom management of discipline is good. Be careful not to get involved with students' personal problems; refer those to me or the counselor. Do not discuss the practices of other teachers, or administrators with students. If a student brings a problem to you, refer the student and the problem to me so that I can attempt to resolve the difficulty as soon as possible. In order to avoid misunderstandings, I am directing you not to involve yourself in problems which students may have with other teachers or with the administration.

Through observation, communications received from other members of the faculty, and your personal comments to me, I have concluded that your rapport with colleagues is strained and needs improvement. The problem has arisen because of allegations that you have criticized and talked about other faculty members with students. I am aware of your concern that other faculty members may have been talking about you. In order to avoid further misunderstandings and conflict, I direct you to refrain from directly or indirectly discussing other teachers or any administrator with students. If you have problems with other faculty members or administrative practices or criticisms of the policies or practices of other teachers or the administration, you should bring those concerns to me so that I can attempt to resolve the problems diplomatically as soon as possible.

You handle routine responsibilities with consistent efficiency. Be consistent with hallway supervision between classes.

COMMENDATIONS

(1) Involvement with Spanish Club and Spanish enrichment activities.

(2) Creating a very attractive physical environment in your classroom.

(3) Organization of lesson for learners, particularly Spanish class.

RECOMMENDATIONS

(1) Increase home communication about learner progress. Inform parents of poor learner performance as need arises. Obtain information from parents relating to effective ways to assist learners.

(2) Work to improve rapport with your colleagues. As indicated on Page 1, I am directing you to refrain from directly or indirectly discussing the policies, practices, or personalities of other teachers or the administration with students and to bring any concerns you may have about other teachers or the administration to me.

(3) As I have explained, I am directing you, not to involve yourself in personal problems or school problems which students may bring to you. I am directing you to bring student problems of which you become aware, to me or the counselor so that I can attempt to resolve the problems.

Keep up the good teaching performance!

3-25-86
Date

(s) Thomas F. Bigwood
Principal

I have personally read the above annual evaluation, today.

3-25-86
Date

(s) Nancy B. Suber
Teacher

APPENDIX B

SOUTHEAST BULLOCH
HIGH SCHOOL

April 8, 1986

Brooklet, Georgia 30415-0068

HAND-DELIVERED

Ms. Nancy Suber

English Department
Southeast Bulloch High School
Brooklet, Georgia 30415

Dear Ms. Suber:

In view of your recent memos and our related conversations, I am writing to clarify the directives which I included in your 1986 evaluation. I do not feel that the clarification would be necessary if you were making a good faith attempt to follow the spirit and the sense of the directives; however, you have chosen to become overly technical in your interpretation of them and have, in violation of the directives, involved students in the process. Frankly, your solicitation of written comments from students regarding my directives would appear to be an intentional effort to discredit me with the students and undermine my effectiveness with them. It is my opinion that you have manifested an insubordinate attitude in your interpretation of the directives.

The directives were intended to address problems which you have had with students and with other teachers. My motive is always to create and maintain a healthy environment in the school for the faculty and the student body. Consequently, please note the following:

(a) You deal with several categories of students: students who are in your classes; students who are not in your classes but are your assigned advisees; and students whom you know but who are neither your advisees nor your current students. With regard to students in your classes, while my directives suggest that you not involve yourself in the students' problems and that you refer problems to an appropriate administrator or counselor, they do not suggest that you are not to determine what the problem might be and to make a judgment as to whom the problem should be referred or as to whether or not the problem is serious enough to deserve attention by anyone. I would suggest that it is a distortion of my directives to conclude that you cannot use your pass to send a student to the restroom as do all other teachers on the faculty in accordance with the school regulations. I would also suggest that it is a distortion of the directives to conclude that you cannot make a determination as to whether or not a student should receive a

certain grade in your class or should do homework in your class or should have a point penalty in your class because of an absence. Those matters relate directly to your classroom duties and should be addressed by you as they are by every other classroom teacher on the faculty. In short, I expect you, within the framework of my directives, to deal with the problems which lie within the purview of your classroom duties. I do not expect you, however, when dealing with the students in your classes, to attempt to resolve problems that those students may have in other classes and would suggest that you refer the students, once you have determined the nature of the problem, to the teacher with whom they have the problem or to me or to the counselor for resolution of the problem. Problems which students may have in other classes are simply not your concern.

(b) You also deal with students who are your advisees. Your responsibility as an advisor, as you know, is to deal with the student's schedule and annual course of study and to assist the student in academic planning. I continue to expect you to fulfill your duties as an advisor to these students. I have directed you and continue to direct you to refer personal problems the students might have which affect this academic course of study to the counselor or to me so that the problems can be resolved. The directive does not mean that you are to refer every comment that might be made by a student to you to someone for action. I expect you to make a judgment as to whether or not the problem is serious enough that someone should do something about it. Nothing in my directive, I reiterate, suggests that you are not to determine what the problem might be in order that you can decide who might best deal with the problem for the student.

(c) Finally, you are, as is everyone else on the campus, associated with students who are neither your advisees nor your current students. When students in this category bring problems to you, whether of an academic or a personal nature, I am directing you to refer the student to someone who can address the problem, if the problem needs to be addressed. I am directing you to refrain from dealing with a problem yourself unless you clear your involvement with me.

I have attached to this letter a copy of the "Referral Form for Guidance Office." It is obviously available for use by all members of the faculty. The categories of the problems identified are clear. Any time you become aware of a problem which you feel justifies a referral, please use the form. When a problem which a student brings to you concerns the student's relationship with another teacher, I am directing you to ask the student whether or not he or she wishes the problem referred to the teacher in question or to the counselor or to an administrator. If the student wishes the problem referred, I am directing you to use the referral form or an appropriate modification of the referral form and to send the student with the problem to the appropriate person. If the student does not wish the problem referred to any of those parties, I am directing you to refrain from discussing the matter further and move on to other matters which are pertinent to your classroom or to your work with the student.

(d) With regard to your relationship with other teachers, your interpretation of my directive is erroneous. It is a distortion of the directive to suggest that you cannot discuss curriculum changes or English departmental or classroom practices with other teachers. It is a distortion to suggest that you cannot discuss the existence or nonexistence of asbestos in a classroom with other teachers. Indeed, the thrust of the directive is that you are not to discuss with students the policies, practices, or personalities of other teachers or the policies, practices, or personalities of administrators. While you must, as a teacher on a faculty, deal directly and diplomatically with other teachers and administrators regarding school matters, I have directed you not to involve students in the process primarily because engaging in criticism of administrators or teachers with students undermines the effectiveness of the named teacher or administrator. As I have indi-

cated, your discussion with students of my directives to you has already had the effect of discrediting me with the students and undermining my effectiveness with them.

(e) I am directing you to refrain from sending students to the office to copy any memos which you send to me or to copy any other memos which have to do with my directives to you or with anything in any way related to my directives or to my ongoing discussions with you. Adhering to this directive is a matter of simple discretion which I expect of all members of the faculty.

(f) Finally, in view of the above, I am directing you to refrain from soliciting statements from students regarding their reactions to my directives to you and to refrain from making lists of comments made to you by students. The statements and the lists are simply examples of your effort to undermine my effectiveness with the students and to protest my directives to you.

As I have indicated, I do not consider your reaction to my directives to be appropriate. I do not believe that you have made a good faith attempt to understand the spirit and sense of the directives or to adhere to them. You have chosen to be argumentative and defensive rather than cooperative and reasonable. I hope that these explanations have helped to put the directives in perspective. If you do not understand either my directives or my explanation of them, I am asking that you respond to this letter within ten (10) days. As I have said, my every effort is to help you and support you, but above all, to promote a productive and positive atmosphere for learning and student growth in this school.

Sincerely,

(s) Tom Bigwood

Tom Bigwood, Principal

Enclosure