**T. Dewey HARDEN, Jr.,
Plaintiff-Appellant,**

v.

**Ralph ADAMS, individually and as
President of Troy State University,
et al., Defendants-Appellees.**

No. 84–7243.

United States Court of Appeals,
Eleventh Circuit.

May 20, 1985.

Rehearing and Rehearing En Banc
Denied June 25, 1985.

Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

T. Dewey Harden brought this action under 42 U.S.C.A. § 1983, for violation of his First and Fourteenth Amendment rights in connection with his termination by Troy State University. The United States District Court for the Middle District of Alabama granted summary judgment in favor of all defendants. Because the district court erred in finding that four of these defendants were entitled to qualified or "good faith" immunity from the claims raised against them in their individual capacities, we reverse in part. We affirm the grant of summary judgment as to these defendants in their official capacities, and as to all other defendants in both their official and individual capacities.

## I. FACTUAL BACKGROUND

T. Dewey Harden was a tenured faculty member at Troy State University. On March 25, 1982, University administrators received a written complaint from Harden's Department Chairman concerning derogatory comments that Harden had made about him. This complaint prompted a series of discussions about Harden among University administrators. On May 6, 1982, Robert Paul, Vice-President of the University and Chief Executive Officer of the Dothan/Ft. Rucker branch of the University, notified Harden that he was terminated as of June 30, 1982. The grounds cited by Paul for the termination were:

1. Unacceptable statements concerning the qualifications of the Chairman of the Department.

2. Making or attempting to make extra charges to students beyond those fees listed in the quarterly schedule.

3. Failure to keep adequate or required office hours.

4. Failure to keep appointments with students.

J. Victor Price, Jr., Montgomery, Ala., for plaintiff-appellant.

Richard F. Calhoun, Troy, Ala., Dow T. Huskey, Dothan, Ala., for defendants-appellees.

5. Failure to submit course outlines as required.

6. Failure to teach the course material as set out in the course outline.

7. Failure to teach course material adequately.

8. Continually bringing or requesting that food be brought into the classroom with students, after being requested not to do so.

9. Requiring personal information and pictures from students, after being requested not to do so.

10. Grievances from students regarding professional duties.

11. Failure to follow established procedure for changing a grade.

12. Advising students improper procedure for changing a grade.

13. Advising students to draft a petition and get the signatures of other students in contravention of University policy.

14. Advising students to draft a petition which was derogatory to the Chairman of the Department.

15. Advising or agreeing the petition be taken to a local newspaper.

16. Failure to follow established procedures by notifying students of grades given by another professor.

17. Fomenting disharmony and dissension among the students and staff of the University in the handling and sponsorship of Gamma Beta Phi.

18. Fomenting disharmony with administration of the University in writing letters to faculty, specifically, the March 1, 1982, letter.

19. Alleged sexual impropriety.

20. Making misleading or incorrect statements to the local news media.

On May 14, 1982, Harden responded through his attorney to Ralph Adams, President of Troy State University. He asked to be afforded the administrative remedies available to him, and to have a clarification of the charges against him. On June 8, 1982, Adams advised Harden that he had delegated to Paul all authority to terminate faculty personnel, and administrative remedies would be handled through Paul's office. Unsatisfied by this response, Harden filed suit in the United States District Court for the Middle District of Alabama. On June 17, 1982, the same day the suit was filed, the University responded, stating that Harden would be granted a hearing before the Faculty Personnel Advisory Committee on June 30, 1982. On June 21, 1982, the Chairman of the Faculty Personnel Committee advised Harden in writing of all of the details of the hearing.

At Harden's request, the hearing was rescheduled for July 7, 1982. Between that date and July 14, 1982, the Committee heard testimony and received documents from both parties. Harden was represented by his attorney and an AEA representative, and was permitted to call and cross-examine witnesses. On August 3, 1982, the Committee delivered its written decision, supporting the termination decision of which Harden had been notified. On August 31, 1982, Paul advised Harden in writing that, based upon the decision and recommendation of the Committee, his termination was final.

A. The Course of Proceedings

On June 17, 1982, Harden filed an action under 42 U.S.C.A. § 1983, alleging that his termination from Troy State University violated his right to free speech and due process. The complaint named as defendants Troy State University; Ralph Adams, individually and as President of Troy State; Robert Paul, individually and as Vice-President of Troy State; and the members of the Board of Trustees, in their official and individual capacities. The complaint sought back pay, punitive damages, reinstatement and injunctive relief.

On August 31, 1982, appellees filed their answer to the complaint. They amended their answer on September 10, 1982, adding several grounds of defense. On September 13, 1982, appellant was granted leave to amend, and did amend his complaint, adding as defendants Troy State Deans Grimmer, Thornton and Kirkland, in their offi-

cial and individual capacities. Appellees answered this amended complaint on October 25, 1982.

A pretrial conference was held on September 1, 1982. An order was issued pursuant to this hearing on September 3, 1982. This order was amended to limit appellant's right to a jury trial to the issue of damages, and to reserve to the court the right to determine the issue of liability, after appellees filed a motion requesting such limitation.

On November 12, 1982, the members of the Board of Trustees of Troy State University moved for summary judgment. This motion was granted January 14, 1983. On January 28, 1983, Troy State University moved for summary judgment. This motion was granted on March 29, 1983. On July 6, 1983, Grimmer, Kirkland and Thornton moved for summary judgment. Their motion was granted on September 27, 1983. On January 12, 1984, Adams moved for summary judgment. The motion was granted by the trial court on March 19, 1984. On February 16, 1984, the last appellee, Robert Paul, moved for summary judgment. On March 19, 1984, the court granted this motion. In each case appellant was ordered to respond, and did in fact respond, to appellees' motions.

On March 2, 1984, appellant filed a motion for summary judgment. The court denied this motion seven days later, without opinion and without having required appellees to respond.

Appellant filed his notice of appeal on April 9, 1984.

## II. ISSUES AND DISCUSSION

### A. Eleventh Amendment Immunity

The district court found that appellant's action against Troy State University, and against each of the appellees in his official capacity, was barred by the Eleventh Amendment. Appellant contests this finding of sovereign immunity on the grounds that Troy State University and the individual appellees who administer it are not "arms" or "agencies" of the state, and that

the funds used to provide relief need not come from the state treasury. There is little merit to either of these claims.

In *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974), the Court held that the Eleventh Amendment barred suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury." This rule applies whether the action is instituted against a state, a state agency or instrumentality, or a state official. *Id.* In *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), the Court held that actions for injunctive relief against a state or its instrumentality were also barred by the Eleventh Amendment. Under either standard the critical inquiry is whether the entity sued can be considered an "agency or instrumentality" of the state; this inquiry is generally conducted by reference to state law. *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Sessions v. Rusk State Hospital*, 648 F.2d 1066 (5th Cir.1981). Factors that bear on this determination include the definition of "state" and "political subdivision"; the degree of state control over the entity; and the fiscal autonomy of the entity. *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518, 1520 (11th Cir. 1983). Where the budget of an entity is submitted to the state for approval, this suggests that the entity is an agency of the state for purposes of the last two factors. *Id.*

The Alabama Supreme Court has held on at least two occasions that state universities, including Troy State University, are agencies or instrumentalities of the state. *See Massler v. Troy State University*, 343 So.2d 1 (Ala.1977); *Ellison v. Abbot*, 337 So.2d 756 (Ala.1976). Moreover, Troy State University is subject to substantial state control: its Board of Trustees, which reports to the state legislature yearly on the condition of the University, is composed in part of state officials and in part of gubernatorial appointees. Sections 16–56–1 and 16–56–3, *Code of Alabama*

(1975). Troy State must also submit its budget to, and receive appropriations from, the state legislature. Section 16–56–10, *Code of Alabama* (1975). The Alabama Supreme Court has also determined that the Board of Trustees of a state university is entitled to sovereign immunity as an instrumentality of the state. *See Hutchinson v. Board of Trustees of University of Alabama,* 47 Ala.App. 460, 256 So.2d 279 (1971).

 Similarly groundless is appellant's argument that the funds which would be used to satisfy a claim against the University or its officials would not come from the state treasury. The University insurance policy which Harden initially identified as a potential source of funds specifically excludes payments for the type of damages he claims. Moreover, Harden has identified no other fund which could be used for the payment of damages. It is also presumed in this Circuit that where an entity's budget is submitted to state legislature for approval, the state is responsible for any debts that cannot be paid out of the entity's revenues. *See Fouche v. Jekyll Island-State Park Authority, supra,* 713 F.2d at 1521. The district court did not err in granting summary judgment as to Troy State University, its Board of Trustees, and the individual appellees in their official capacities.

### B. "Good Faith" Immunity

Appellant's action also named Adams, Paul, Grimmer, Thornton, Kirkland and the members of the Board of Trustees as defendants in their individual capacities. The district court granted summary judgment to these appellees in their individual capacities as well, holding that some appellees had no individual connection with Harden's termination and others were protected by "good faith" or "qualified" immunity. Appellant claims that these conclusions were error.

 As to President Adams and the members of the Board of Trustees, the district court does not appear to have erred in granting summary judgment. There is

no evidence to suggest that any of these individuals plays a role in bringing charges against Harden, deciding to terminate him or conducting the hearing following his termination notice. The members of the Board of Trustees stated in sworn affidavits that they had no knowledge of Harden or his termination before this action was filed. And President Adams specifically disclaimed any responsibility for the decision in his letter of June 8 to Harden's lawyer. Moreover, in *Prebble v. Broderick,* 535 F.2d 605 (10th Cir.1976), the Tenth Circuit held that university trustees were not individually liable under Section 1983 where there was no evidence that they had taken part in the termination of a faculty member, though they had been informed of it.

As to the other appellees, there is little question of their direct participation. Grimmer, Thornton and Kirkland, all deans at Troy State University, conveyed grievances from other members of the university community, deliberated on those complaints that had been received and recommended to Vice-President Paul that Harden be terminated. Paul was responsible for the ultimate decision and for the conduct of the subsequent. hearing. The district court's determination that these appellees were nonetheless protected from individual liability by qualified or "good faith" immunity requires closer consideration.

 State officials acting in their individual capacities are not protected by the sovereign immunity conferred by the Eleventh Amendment. They may, however, be immunized against legal action if the challenged action was undertaken in good faith and was within the discretion conferred upon them by their employment. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court addressed the interpretive difficulties caused by a subjective standard of "good faith," and the need to facilitate summary disposition of specious actions, by establishing an

"objective" standard of immunity. Under this standard, government officials are shielded from liability for civil damages if their conduct was within the discretion conferred by their employment and did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. *See also Zeigler v. Jackson,* 716 F.2d 847 (11th Cir.1983) (applying *Harlow v. Fitzgerald* standard).

Appellant's challenge to the district court's decision focuses on the second part of the *Harlow* standard.[1] He argues that the district court erred in finding that appellees' conduct was immunized, because it violated "clearly established ... constitutional rights of which a reasonable person would have known." Appellant claims that this termination for seven reasons relating to his criticism of his Department Chairman violates the First Amendment, and that the University's failure to grant him a pre-termination hearing violates the due process guarantee of the Fourteenth Amendment. In granting summary judgment for appellees in their individual capacities, the district court found that there was "no material issue of fact" as to either constitutional claim.

### 1. Violation of First Amendment

The Supreme Court has held that a teacher's criticism of his superiors on matters of public concern is protected by the First Amendment and may therefore be an impermissible basis for termination of his employment. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Yet reliance on impermissible factors does not, in and of itself, render a termination decision unconstitutional, if there were other, permissible reasons for the termination which were sufficient to support the decision. *Mt. Healthy Board of Education v. Doyle, supra,* 429 U.S. at 285–86, 97 S.Ct. at 575.

### a. Vice-President Paul

The district court relied heavily on the *Mt. Healthy* doctrine in finding that Paul's role in the termination did not violate appellant's rights. The court acknowledged the possibility that several of the factors relating to Harden's criticism of the Department Chairman and relied upon to support the termination of Harden were "impermissible," but concluded that there were also thirteen permissible reasons for termination, twelve of which were "not contested" by appellant.

The district court erred in concluding that the *Mt. Healthy* doctrine controlled the instant case. First, that doctrine is narrower than the district court's opinion suggests. The *Mt. Healthy* doctrine does not apply in every case where officials can demonstrate other reasons for a termination; it sustains a termination based on impermissible reasons only when there are other reasons *sufficient to support the decision.* Second, *Mt. Healthy* is distinguishable from the instant case in that the appellant there did not have tenure, a fact on which the Court explicitly relied in reaching its decision. To demonstrate reasons sufficient to support the termination of a tenured faculty member, a university would have to make a considerably stronger showing than appellees did in *Mt. Healthy.* Paul has made no such showing in the instant case. Many of the stated reasons for termination were seemingly trivial (bringing food to class, not following course outlines, failing to keep

---

**1.** Appellant argues that appellee Adams did not have the power to delegate his authority of termination of faculty to appellee Paul, a claim which would seem to go to the question of whether Paul was acting within the discretion conferred upon him by his employment in terminating Harden. But the cases cited by appellant concern public school teachers and state merit employees; he points to no authority which concerns the power of the President of Troy State University to delegate the authority to terminate faculty members to the Vice-President or the Chief Executive Officer of a particular campus. There is, moreover, nothing in that portion of the Alabama Code relating to Troy State University which suggests that such delegation is beyond the President's power.

appointments with students); others were equivocally maintained by the University (the charge of sexual impropriety was raised, disclaimed at the hearing, and re-raised in the district court); and all were denied by appellant during the district court proceedings. It is impossible to say, viewing all of these allegations in the light most favorable to the non-movant (Harden)[2] that there was no material issue of fact as to whether the permissible reasons cited for his termination were sufficient to support the decision. This conclusion is supported by the strong policy reflected in the decisions of the Supreme Court and this Circuit against resolving complex First Amendment issues on a motion for summary judgment. *See Perry v. Sindermann, supra; Foley v. Alabama State Bar*, 648 F.2d 355 (5th Cir. Unit B 1981). For all of these reasons, the district court erred in granting summary judgment to Paul.

b. Deans Grimmer, Thornton and Kirkland

 The district court's determination as to Grimmer, Thornton and Kirkland is even less sound; the court failed even to acknowledge the possibility of a First Amendment violation perpetrated by these appellees. The district court stated that these officials were simply doing their duty

in reporting negative information and recommending the termination of appellant. Yet the potential for a First Amendment violation existed in their cases as well. Deans Grimmer and Kirkland were directly involved with the communication and investigation of complaints concerning Dr. Harden's criticism of his Department Chairman; and Dean Thornton provided information suggesting that Dr. Harden had "fomented disharmony" in connection with his sponsorship of Gamma Beta Phi. Moreover, each was fully informed of all charges against Harden, and discussed them at length with the others before recommending to Vice-President Paul that Harden be terminated. Thus the record strongly suggests that these three appellees were intimately involved in a decision to terminate which was based on impermissible factors.[3] As discussed above, it seems unlikely that the permissible factors cited by the University were sufficiently strong to bring the case within the *Mt. Healthy* doctrine. The district court erred in finding that there was no issue of material fact as to whether these appellees violated appellant's constitutional rights.

2. Violation of Due Process

Appellant also argues that the hearing which was provided in connection with his

---

**2.** A court reviewing a grant of summary judgment must determine whether the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact, when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983).

**3.** Although *Grimmer, Thornton and Kirkland* made no attempt to claim reliance on the advice of any lawyer, Grimmer states in his affidavit that "Dr. Thornton, Dr. Kirkland and I discussed in detail Dr. Harden's constitutional rights and whether there had been a violation of those rights with the school attorney prior to notifying Dr. Harden of his proposed dismissal." This reference, although vague as to the specific advice which was given, might have been dispositive under a subjective standard of immunity. It is not, however, determinative under the objective standard articulated in *Harlow v. Fitzgerald, supra.* Harlow states that in determining whether an official violated "established statutory or constitutional rights of which a

reasonable person would have known," the court should consider whether the law in question "was clearly established at the time an action occurred." 457 U.S. at 818 [102 S.Ct. at 2739]. Confusion or ambiguity in the law at the time of the action complained of may make a case appropriate for summary judgment in favor of government officials. As the earlier survey of relevant constitutional doctrine suggests, there was no ambiguity in the standards concerning the First Amendment protection afforded faculty members, and the limits on such protection imposed by the *Mt. Healthy* doctrine. That one lawyer may have been mistaken in his judgment as to how these well-established standards applied to the facts of this case does not change the fact that a reasonable lawyer, or indeed a reasonable person, should have known that Harden had a First Amendment right which was implicated by the University's action. The final determination as to whether, as a matter of fact, the application of the *Mt. Healthy* doctrine to this case renders appellees immune from suit, should be decided on remand.

termination violated his right to due process. He claims primarily that he was entitled to a pre-termination hearing: the hearing provided by the University was not held until more than two months after he had been notified of his termination. He also suggests that the hearing did not conform to the requirements of due process, as panel members were not impartially selected and were subject to continuing pressure from the university administration.

Before an individual is deprived of a protected interest, he must be afforded opportunity for some kind of hearing, except in those extraordinary circumstances where some valid governmental interest justifies postponing the hearing until after the deprivation takes place. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). When a faculty member at a university is granted tenure, he acquires a property interest in his employment which is entitled to such protection. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Slowchower v. Board of Education*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1955). The record in this case provides no reason why Dr. Harden should not have been provided with a pre-termination hearing. Because he had a property interest in his employment, he was entitled not merely to a "name-clearing" hearing, which may be held at any time, but a legitimate opportunity to contest the deprivation of his property, which must ordinarily be provided before the decision concerning deprivation is made. *See Campbell v. Pierce County*, 741 F.2d 1342 (11th Cir. Sept. 18, 1984) (distinguishing between interests requiring "name clearing" hearing and interests requiring pre-termination hearing). There was, moreover, no threat to public safety or other extraordinary circumstance requiring the termination decision to be made before holding a hearing. Although the Supreme Court has held that under some circumstances the failure to hold a hearing before the denial of a property right does not violate due process, *see Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), appellant's claim that the University failed to provide him with a pre-termination hearing raises, at the very least, a material issue of fact as to whether Vice-President Paul, who was directly responsible for the hearing, violated Dr. Harden's due process rights. Thus with respect to appellant's due process claim as well, the district court erred in granting summary judgment to Vice-President Paul.[4]

### C. Other Claims

Appellant raises three procedural claims: he argues that the court erred in refusing to compel production of certain documents; that the pretrial order specifying jury trial on the issue of damages only violated his right to a jury trial; that the court erred in denying his motion for summary judgment. None of these claims has merit.

On February 2, 1982, the district court heard argument on appellant's motion to compel production, and on February 3, 1982, ordered the production of a variety of documents. Although the six items cited by appellant in his brief were not included, the record suggests that appellant made no objection to the order at the time. Moreover, a district court enjoys broad discretion over discovery matters and will be reversed only for abuse of discretion. *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir.1979). While appellant explains the relevance of items not included in the production order, he does not demonstrate that their exclusion was an abuse of discretion.

Harden argues that the amendment to the pretrial order which restricted

---

4. Further proceedings on the due process claim should encompass not only the failure to provide a pre-termination hearing, but the alleged procedural irregularity in the hearing which was provided.

jury trial to the issue of damages was made without giving him an opportunity to be heard, and impermissibly restricts his right to jury trial. However, Harden's complaint itself requests a jury trial only "on the issues of damages contained herein." Moreover, appellees note that the parties stipulated at the pretrial conference that a jury would be empaneled only to determine damages, and that amendment to the pretrial order sought only to include that stipulation, which had been left out of the original order. Appellees also note that Harden made no objection either at the time the amendment was made, or on two later occasions when the amended order was included in additional pretrial orders. Finally, on March 1, 1984, Harden filed a joint motion to drop his jury demand which included language stating that, if an appeal were taken and the case remanded, a jury trial should be had on the issue of damages only. It does not appear that appellant's right to a jury trial was restricted.

 Appellant filed his motion for summary judgment on March 2, 1984, when all appellees except appellee Paul had prevailed on motions for summary judgment, and appellee Paul had such a motion before the court. Because so many of Harden's claims had already been resolved against him on motions for summary judgment, it does not appear that the district court erred in denying appellant's motion ·for summary judgment. Moreover, the same material issues of fact which militate against the district court's decision to grant summary judgment to appellees Grimmer, Thornton, Kirkland and Paul militate against a grant of summary judgment to appellant.

The judgment of the district court as to appellees Paul, Grimmer, Thornton and Kirkland in their individual capacities is REVERSED and REMANDED for further proceedings. The judgment of the district court as to all other appellees in their individual capacities and all appellees in their official capacities is AFFIRMED.