[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 23, 2005
THOMAS  K. KAHN
CLERK

_____

No. 05-11860
Non-Argument Calendar

_____

D. C. Docket No. 003-00514-CV-FMT-29-DNF

KEN WILLIAMS,

Plaintiff-Appellant,

versus

DISTRICT BOARD OF TRUSTEES
OF EDISON COMMUNITY COLLEGE, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 23, 2005)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

This appeal presents an issue of first impression: whether a Florida

community college, under the new education code enacted in January 2003, is an arm of the state, entitled to immunity under the Eleventh Amendment. Ken Williams, a former professor at Edison Community College, appeals the summary judgment entered in favor of the District Board of Trustees of Edison Community College (the Trustees) and against his complaint. Because a Florida community college is an arm of the state, Williams's claims against the Trustees are barred by the Eleventh Amendment. We affirm the judgment of the district court.

## I. BACKGROUND

Although this appeal turns solely on an issue of law, a description of the background is necessary to frame the issue. We first explain the facts alleged in Williams's complaint. We then explain the change in the education code in Florida. We then review the procedural history of this appeal.

### A. Facts

Williams was employed as a full-time mathematics professor by Edison Community College in Fort Myers, Florida, from August 2001 until May 2003. Williams contends that in December 2001 Edison told him to send grades to his students electronically. Because he believed this policy violated the Family Educational Rights and Privacy Act (FERPA), Williams complained to the registrar, Lester Lugo. Lugo told Williams that "personally identifiable student

2

information" should not be electronically transmitted, but that he should send the grades electronically according to the policy.

On January 8, 2002, Williams's supervisor, Dr. James Newton, prepared an evaluation of Williams after reviewing Williams's performance in the classroom, his interactions with the students, and his relationship with the faculty. Although Newton recommended that the Trustees not renew Williams's employment contract, the Trustees decided to renew Williams's contract because he had been teaching for only one semester. The Trustees directed that a performance improvement plan be developed with Williams.

In February 2002, Williams filed a formal complaint with the Florida Commission on Human Relations (FCHR) and contended that the policy of sending grades to students via e-mail violated the students' privacy rights under FERPA. The FCHR conducted an investigation and concluded that the policy did not violate FERPA. Williams did not appeal that conclusion.

Dr. Edith Pendelton replaced Newton as Williams's supervisor for the next academic year. She implemented a performance improvement plan for Williams as recommended by the Trustees. When Pendelton evaluated Williams's performance at the end of the next semester, she concluded that Williams's performance had not improved and recommended that the Trustees not renew his

3

contract. The Trustees followed this recommendation, and Williams's contract was not renewed for the 2003-2004 school year.

## B. Change in Florida Law

In January 2003, the Florida Legislature repealed its educational code, sections 228.001 through 228.041 of the Florida Statutes, to consolidate the educational code in one chapter. See Caldwell v. Bd. of Trs. Broward Cmty. Coll., 858 So. 2d 1199, 1201 n.1 (Fla. 4th DCA 2003). The legislature enacted in its place the Florida K-20 Education Code, sections 1000.01 through 1013.01, to structure the new educational system. The vast majority of the substance of the educational code remained the same; most sections were merely renumbered. See id. The major substantive change was to transfer the powers of the former Board of Regents to the Florida Department of Education. See Fla. Stat. §§ 1000.01-1013.01.

## C. Procedural History

Williams sued the Trustees and alleged that the Trustees did not renew his employment contract in retaliation for his complaint to the FCHR. Williams also alleged that the Trustees deprived him of his First Amendment rights to expression and association, his Fifth and Fourteenth Amendment rights to due process, and his Sixth Amendment right to counsel and access to courts. Additionally, he

alleged that the conduct of the Trustees violated the Florida Whistleblower Act. See Fla. Stat. §§ 112.3187-112.31895. The district court granted summary judgment for the Trustees on the ground that the Eleventh Amendment barred Williams's claims because a Florida community college is an arm of the state.

## II. DISCUSSION

The Eleventh Amendment bars federal courts from entertaining suits against states. U.S. Const. Amend. XI. Although the text of the Eleventh Amendment does not appear to bar federal suits against a state by its own citizens, the Supreme Court long ago held that the Amendment bars these suits. Hans v. Louisiana, 134 U.S. 1, 10 S. Ct. 504 (1890); see also Manders v. Lee, 338 F.3d 1304, 1308 n. 8 (11th Cir. 2003). We "review[] de novo a district court's ruling regarding Eleventh Amendment immunity." Abusaid v. Hillsborough County, 405 F.3d 1298, 1309 (11th Cir. 2005).

The law is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when an arm of the State is sued." Manders, 338 F.3d at 1308 (internal quotation marks omitted). The sole issue in this appeal is whether a Florida community college is an arm of the state. To determine whether a Florida community college is an arm of the state for Eleventh Amendment purposes, this Court considers the following four factors: (1) how the state defines the entity; (2)

5

what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgment against the entity. Id. at 1309. Although state law is considered, the question whether an entity is an arm of the state is one of federal law. Id. We address each of these factors in turn, all of which support the conclusion that a community college is an arm of the state.

*A. Definition of a Community College under Florida Law*

In Florida, a community college is an entity created and governed by state law, and it is intended to serve as a bridge between state and local educational institutions. The Florida K-20 Education Code was enacted to provide "a state system of schools, courses, classes, and educational institutions and services adequate to allow, for all of Florida's students, the opportunity to obtain a high quality education." Fla. Stat. § 1000.01(3). The state is responsible for the establishment of the system of public education "through laws, standards and rules." Id. § 1000.03(3).

Public education in Florida is delivered through "publically supported and controlled" entities, including schools, community colleges, state universities, and other postsecondary educational institutions. Id. § 1000.04. A community college is a public educational institution "operated by community college district boards of trustees under the statutory authority and rules of the State Board of

Education." Id. § 1004.65(1). Community colleges are "locally based and governed entities with statutory and funding ties to the state government," which "strive to maintain sufficient local authority and flexibility while preserving appropriate legal accountability to the state." Id. § 1004.65(4). Florida law also provides that "no department, bureau, division, agency, or subdivision of the state exercise any responsibility and authority to operate any community college of the state except as specifically provided by laws or rules of the State Board of Education." Id. § 1004.67.

Every authorized community college district "is an independent, separate, legal entity created for the operation of a community college." Id. § 1004.65(2). Each community college in Florida operates under the direction and supervision of a board of trustees. Id. § 1001.63. The board of trustees is a corporation with all corporate powers, including the right to sue and be sued. Id. § 1001.63. The board of a community college is not an agent of the executive branch of state government under Florida law, and it is not a state agency under the Florida Whistleblower's Act. Caldwell, 858 So. 2d at 1200-02.

In short, a community college is a creature of the State of Florida, but it is locally based. Community colleges are intended to offer higher educational benefits from the state for a local community. Although Florida law favors a

7

determination that a community college is an arm of the state, this factor does not weigh heavily in our analysis.

## B. *Degree of Control by the State*

The degree of control exercised by the state, acting through the State Board of Education, weighs heavily in favor of concluding that a community college is an arm of the state for two reasons. First, the State Board of Education exercises substantial control over community colleges. Second, members of the board of trustees of community colleges are appointed by state officials.

The State of Florida maintains substantial control over its educational system, including community colleges. See Fla. Stat. §§ 1000.02(1)(e) and 1000.03(1). The state controls community colleges through the State Board of Education, an entity that is clearly an arm of the state. As "the chief implementing and coordinating body of public education in Florida" id. § 1001.02(1), the State Board oversees "the enforcement of all laws and rules, and the timely provision of direction, resources, assistance, intervention when needed, and strong incentives and disincentives to force accountability for results." Id. § 1000.03(2)(b).

The specific powers given to the community colleges and their boards of trustees are restricted by the State Board of Education. See id. § 1000.64. The definition of a community college reflects these restrictions: community colleges

are operated by a board of trustees "under statutory authority and rules of the State Board of Education." Id. § 1004.65(1). The powers and duties of the board of trustees are routinely limited by reference to the rules of the State Board of Education. See id. §§ 1001.64(1), (2), (4)(b), (8)(a), (8)(d), (8)(g), (12), (14), (18), (36), (42). The powers and duties of the presidents of community colleges are also limited by reference to the rules of the State Board of Education. Id. §§ 1001.65(1)-(5), (7), (23).

Florida, acting through the State Board of Education, "remains responsible for K-12 and community college education." NAACP, Inc. v. Fla. Bd. of Regents, 876 So. 2d 636, 640 (Fla. 1st DCA 2004). There are many examples of the control exercised by the State Board of Education over community colleges: the State Board of Education adopts and modifies minimum and uniform standards, Fla. Stat. § 1001.02(2)(d); the State Board adopts and submits a proposed budget to the governor and state legislature, id. § 1001.02(2)(e); the State Board adopts a system-wide strategic plan that provides goals and objectives for state universities and community colleges, id. § 1001.02(5)(a); the State Board provides for each community college educational training and service programs, id. § 1001.02(7)(a); the State Board establishes criteria for making recommendations for the establishment of additional community college centers or campuses, id. §

1001.02(7)(e); the State Board examines the annual administrative review of each community college, id. § 1001.02(7)(f); the State Board reviews and administers state programs of support for community colleges, including tuition and out-of-state fees, id. § 1001.02(8); and the State Board sets minimum standards, definitions, and guidelines for community colleges, id. § 1001.02(9).

In addition, the process used to select members of the board of trustees of community colleges in Florida is under state control. See Harden v. Adams, 760 F.2d 1158, 1163-63 (11th Cir. 1985). The governor appoints the members of the board of trustees of a community college, and the senate confirms the appointees. Id. § 1001.61(2). There is no local control or governance of community colleges.

### C. *Where a Community College Derives Its Funding*

The source of funds for community colleges in Florida also weighs in favor of concluding that a community college is an arm of the state. Although Edison is not exclusively funded by the state, state approval of institutional budgets evidences state control. Harden, 760 F.2d at 1163-64. There is state approval for the budgets of community colleges in Florida. The board of trustees must submit a budget request for the college to the State Board of Education. Fla. Stat. § 1001.64(11). The board of trustees must also account for expenditures of all state, local, federal, and other funds as required by the Department of Education, an

10

agency governed by the State Board of Education.  Id. §§ 1001.20, 1001.64(12).

Another source of funding is the Community College Program Fund.  This fund is

comprised of "all appropriations made by the Legislature for the support of current

operating programs and shall be apportioned and distributed to the community

college districts of the state on the basis of procedures established by law and rules

of the State Board of Education."  Id. § 1011.81.

*D.  Liability and Risk of Judgment*

A final factor also weighs in favor of concluding that a community college

is an arm of the state.  Because community colleges are separate legal entities that

may enter into contracts and sue and be sued, id. § 1001.63, a judgment could

validly be entered against the community college.  In that event, the state would be

regarded as the judgment debtor for the college.

Although Florida has enacted laws to ensure that community colleges are

able to satisfy their liabilities, those laws also reflect that the state is ultimately

responsible for those liabilities.  A community college may be self-insured, it may

enter into risk-management programs, or it may purchase insurance to cover losses

and expenses incurred in defense of civil actions against officers, employees or

agents of the board of trustees.  Id. § 1012.85.  Regardless of the choice a board of

trustees regarding self-insurance, insurance, or risk management, the funds are

derived from the state. The funds for self-insurance and insurance premiums are derived from state appropriated funds, and judgments against a state risk management trust fund are regarded as judgments assumed by the state. See Tuveson v. Fla. Governor's Council on Indian Affairs, Inc., 734 F.2d 730, 734 (11th Cir. 1984).

### E. Final Analysis

A community college under the Florida K-20 Educational Code is an arm of the state for purposes of immunity under the Eleventh Amendment. A community college is a creature of state law, and Florida maintains substantial control over community colleges through the State Board of Education. The board of trustees of the community college must submit a budget to the State Board of Education and must account for all expenditures. Finally, the state bears potential legal liability and risk of a judgment against a community college.

### III. CONCLUSION

Because we conclude that a community college is an arm of the state, the District Board of Trustees of Edison Community College is entitled to immunity under the Eleventh Amendment. The judgment of the district court is, therefore, **AFFIRMED**.