[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13982
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cv-00102-HNJ

AUDREY DELORES MITCHELL,

Plaintiff - Appellant,

versus

UNIVERSITY OF NORTH ALABAMA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 30, 2019)

Before TJOFLAT, JORDAN and GRANT, Circuit Judges.

PER CURIAM:

Audrey Mitchell sued her employer, the University of North Alabama (UNA), following several years of alleged racial discrimination and retaliation. She asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. §§ 1981 and 1983; and Alabama state law. UNA moved for judgment on the pleadings, and the magistrate judge granted UNA's motion. Ms. Mitchell now appeals, proceeding *pro se*. After reviewing the record and the parties' briefs, we affirm.

## I

We review *de novo* an order granting judgment on the pleadings. *See Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Judgment on the pleadings is appropriate where no material facts are in dispute and the moving party is entitled to judgement as a matter of law. *See id.*

We read Ms. Mitchell's brief, like all *pro se* briefs, liberally. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## II

We set out the relevant facts as alleged in the operative complaint and accept them as true for purposes of our discussion. *See Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014); *Perez*, 774 F.3d at 1335.

**A**

Ms. Mitchell, an African-American woman, was hired in 1999 to serve as Coordinator of Administration in UNA's Department of Housing and Residence Life. Beginning in 2006, she served as the Director of the Department of Housing, reporting to David Shields, a white male who served as Vice-President of Student Affairs. In that role, she interacted frequently with Kevin Jacques, a white male who served as Director of Residence Life. In essence, Ms. Mitchell alleges that over the course of several years, Mr. Shields and Mr. Jacques schemed to undermine her and get her into trouble.

The alleged trouble began in 2010. In May or June of that year, Mr. Shields contacted Ms. Mitchell about reports that she had donated UNA furniture to students, in violation UNA policy. Ms. Mitchell denied the reports, and encouraged Mr. Shields to speak with Jimmy Waddell, a white male and one of her subordinates, about the reports. Mr. Waddell informed Mr. Shields' assistant that he had approved donations of old furniture to UNA staff as well as to an indigent family. Mr. Waddell also told Mr. Shields that he did this without Ms. Mitchell's approval or consent. Mr. Waddell was not reprimanded or disciplined for these donations.

Then, in July of 2010, Ms. Mitchell was given an official reprimand letter and $3,000 salary reduction because she had purportedly replaced items stolen from a dorm—namely, a dinette set—rather than following standard protocol and having

3

the student request a replacement from the State Board of Adjusters. But according to Ms. Mitchell, she replaced the dinette set under express instruction from Cindy Conlon, a white female and the Director of Procurement. Unlike Ms. Mitchell, Ms. Conlon was not reprimanded.

Ms. Mitchell appealed the salary reduction to UNA President William Cale, but he chose to keep the original punishment in place. According to Ms. Mitchell, this appeal process was faulty in various ways. For example, she should have been able to appeal to the board of trustees, rather than to Mr. Cale, because he had been involved in determining her original sanction.

In May of 2013, a newspaper article quoted Mr. Shields as saying that a change in management would cause residence hall staff to lose their jobs. This upset some of Ms. Mitchell's staff, who had not heard about these plans. Mr. Shields allegedly undermined Ms. Mitchell by telling some of her staff that she should have informed them about the management change. But according to Ms. Mitchell, she had refrained from speaking with her staff about this issue because only the university president could lay off or terminate employees.

In July of 2013, a resident e-mailed Ms. Mitchell alleging that someone on her staff had stolen some of her belongings. Ms. Mitchell proceeded to investigate the reports. Brenda Terry, a white female responsible for cleaning the buildings, told Ms. Mitchell that she had seen two white Resident Assistants load items into a

4

car parked near the building.  Video footage appeared to confirm Ms. Terry's report.  Other residents then came forward with similar reports of stolen property.  But the Resident Assistants were never reprimanded or disciplined.  Nor was Mr. Jacques, their supervisor.

In July of 2014, Ms. Mitchell and Mr. Waddell were called into a meeting with Mr. Shields.  Mr. Shields was upset with Ms. Mitchell and Mr. Waddell because they had spoken to Clinton Carter, a white male and the Vice-President of Business and Financial Affairs, about relocating the Department of Housing to Mr. Carter's area.  Mr. Shields told Ms. Mitchell and Mr. Waddell that their actions were an embarrassment and grounds for dismissal.  Mr. Shields also informed them that their department would be reorganized, and threatened them with a possible pay reduction.

Mr. Waddell then spoke about Mr. Shields' proposed reorganization with John Thornell, Mr. Cale's successor as interim President of UNA.  Mr. Thornell indicated that he was unaware of any reorganization, but advised Mr. Waddell and Ms. Mitchell to accept the reorganization and avoid the appearance of insubordination.

Later, Mr. Thornell met with Ms. Mitchell at her request.  They discussed Ms. Mitchell's various problems with Mr. Shields, and possible solutions, such as

5

relocating Ms. Mitchell's department under Mr. Carter's area.  This discussion led Ms. Mitchell to believe she would be involved in any reorganization decision.

In October of 2014, Ms. Mitchell's area was reorganized and she was given a new position.  But instead of being reassigned to Mr. Carter's area—which Ms. Mitchell preferred and had asked for—she continued reporting to Mr. Shields.  Ms. Mitchell told Mr. Thornell that she would not accept this new position, but he told her no other configuration was available.  She therefore continued to report to Mr. Shields for about three months.

In December of 2014, Ms. Mitchell filed her first EEOC charge, alleging racial discrimination and retaliation.  The UNA received notification of this complaint.

In January of 2015, Mr. Shields allowed Ms. Mitchell's department to be transferred under Mr. Carter's supervision.  According to Ms. Mitchell, this reorganization led to various incidents of retaliation.  For example, in the 2015–2016 UNA catalog, Ms. Mitchell's name was omitted and her area of responsibility was listed under Mr. Jacques.  In another incident, at a meeting of UNA officials in May of 2015, Mr. Shields publicly pointed out flaws in Ms. Mitchell's UNA website, even though other sites—such as Mr. Jacques'—also contained errors.

In June of 2015, Mr. Jacques drafted a section of a report to the UNA Board of Trustees that contained false information about Ms. Mitchell—namely, false

6

allegations about Housing staff's purported opposition to a merger of the Residence Life and Housing departments. Before the Board met to review the report, Mr. Shields corrected the false information. Ms. Mitchell reported this issue to Mr. Carter and argued for Mr. Jacques to be reprimanded. But Mr. Carter declined her recommendation, and discouraged her from continuing to press issues like these with him.

In August of 2016, fire alarms went off in Ms. Mitchell's building. After Ms. Mitchell returned to her office, Mr. Shields—who was no longer her superior—entered unannounced to advise her that everyone needed to evacuate the building. Ms. Mitchell was upset by this unannounced visit, and reported the incident to her supervisor. UNA determined that, under the circumstances, it was appropriate for Mr. Shields to enter Ms. Mitchell's office and advise her of the evacuation.

In September of 2016, Mr. Thornton convened a meeting including Ms. Mitchell, Mr. Shields, and Mr. Jacques to discuss the ongoing conflict between them. Ms. Mitchell was informed that the the conflict had reportedly caused problems with the Fall 2016 student move-in process, and that UNA was calling in a mediator to help address the conflict. She was also informed that both she and Mr. Jacques could be dismissed if the issues between them were not resolved.

In January of 2017, Catherine White, a white female and a UNA human resources official, told Ms. Mitchell that her area would be reorganized.

7

Specifically, it would be moved back under Mr. Shields' supervision, combined with Mr. Jacques' area, and headed by Kimberly Greenway, a white female. Ms. Mitchell would also be assigned to an office adjoining Mr. Jacques' office. Ms. Mitchell was allowed to submit a summary of her objections and concerns regarding this new configuration.

As it turned out, this proposed reorganization never materialized. Instead, in July of 2017, Ms. Greenway told Ms. Mitchell that she was being moved to a new position in the Financial Affairs area, and that she could accept the new position, resign, or be terminated. Ms. Mitchell alleges that she was not given any details about her new position, whereas Mr. Jacques, who was also being moved to a new position, was given some information about his new role. Although her new position has not reduced her pay, benefits, or title, Ms. Mitchell believes it has other drawbacks. It entails less responsibility, involves undesirable work such as data entry, and will not lead to future promotions. In short, she believes that this reorganization is another instance of retaliation.

**B**

Ms. Mitchell, proceeding *pro se*, filed suit against UNA in January of 2016. As later amended, her complaint asserted claims for race discrimination under Title VII and 42 U.S.C. § 1981; retaliation under Title VII and 42 U.S.C. § 1983; hostile work environment under Title VII and § 1981; violation of her Fourteenth

8

Amendment due process rights under § 1983; and coercion and defamation under Alabama law.  Ms. Mitchell also filed an "addition" to her complaint, covering allegations of events that took place during 2016.[1]

UNA moved for judgment on the pleadings.  In its motion, UNA argued that Ms. Mitchell's Title VII claims failed because she did not identify an adverse employment action for her Title VII discrimination and retaliation claims, did not file a timely EEOC charge, and did not sufficiently allege a racial motive as to her hostile work environment claim.  UNA also argued that Ms.Mitchell's §§ 1981 and 1983 claims were barred by Eleventh Amendment immunity, and that her state-law claims were barred by sovereign immunity.

Ms. Mitchell responded with a motion that she entitled a motion for judgment on the pleadings.  The motion argued that UNA had committed acts of perjury and detailed instances of UNA's alleged negligence concerning Mr. Shields' actions. The magistrate judge construed this response as a motion for summary judgment, because it asked the court to look beyond the pleadings.  The magistrate judge then ordered that any briefing or ruling on Ms. Mitchell's summary judgment motion be held in abeyance pending a ruling on UNA's motion for judgment on the pleadings. After the parties consented to the magistrate judge conducting all further

---

[1] Ms. Mitchell later filed a notice containing additional allegations concerning events in 2017.  In ruling on the motion for judgement on the pleadings, the magistrate judge considered these allegations as well.

9

proceedings, the magistrate judge granted UNA's motion and dismissed all of Ms. Mitchell's claims. Ms. Mitchell now appeals.

## III

Ms. Mitchell challenges the magistrate judge's order on various grounds. We address each of her arguments in turn.

## A

The magistrate judge dismissed Ms. Mitchell's §§ 1981 and 1983 claims based on Eleventh Amendment immunity and the applicable statute of limitations.

Although we read Ms. Mitchell's brief, like all *pro se* briefs, liberally, her brief fails entirely to discuss the issue of Eleventh Amendment immunity. Accordingly, we deem the issue abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (explaining that when an appellant fails to challenge properly on appeal one of the grounds for the district court's judgment, she has abandoned that ground and the judgment is due to be affirmed).

Alternatively, we agree with the magistrate judge's ruling. Under the Eleventh Amendment, "nonconsenting states may not be sued by private individuals in federal court." *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001). Eleventh Amendment immunity extends to state agencies and instrumentalities, including, in some instances, state universities. *See Harden v. Adams*, 760 F.2d 1158, 1163 (noting that "[t]he Alabama Supreme Court has held .

10

. . that state universities . . . are agencies or instrumentalities of the state" and concluding that Troy State University had Eleventh Amendment immunity).  Here, the only named defendant is UNA, and Ms. Mitchell has not sued any UNA officials in their individual capacities.  *See Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) (explaining the Eleventh Amendment does not protect state officials sued in their individual capacities for employment-related acts).  Because UNA is a state university in Alabama, it is entitled to Eleventh Amendment immunity.

For similar reasons, Ms. Mitchell has also abandoned any argument concerning the statute of limitations.  *See Sapuppo*, 739 F.3d at 680.  The magistrate judge concluded that Ms. Mitchell's claims dating to incidents in 2013 and earlier were barred by the limitations period.  Ms. Mitchell's brief, however, makes no mention of the statute of limitations.

The magistrate judge further concluded that Ms. Mitchell's state-law claims of coercion and defamation were barred by state sovereign immunity. *See Willis v. Univ. of N. Ala.*, 826 So.2d 118, 121 (Ala. 2002) (explaining that under the Alabama Constitution, courts do not have subject-matter jurisdiction over claims against the state); *Vandenberg v. Aramark Educ. Servs.*, 81 So.3d 326, 332 (Ala. 2011) (explaining that sovereign immunity also extends to Alabama's state universities).

11

But Ms. Mitchell's brief, construed liberally, fails to mention or address sovereign immunity. She has therefore abandoned this issue, too.

**B**

The magistrate judge dismissed Ms. Mitchell's Title VII discrimination and retaliation claims as untimely and for failing to state viable claims. Ms. Mitchell again appears to argue that this was in error.

We first address the Title VII allegations that the magistrate judge dismissed as untimely. Prior to filing a Title VII claim in federal court, a plaintiff must first file a charge with the EEOC. *See Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004). For a charge to be timely, it must be filed within 180 days of the last discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1). Therefore, generally speaking, only those claims arising within 180 days prior to the filing of the discrimination charge are actionable. *See EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). In some cases, a continuing violation may extend the limitations period. *See id.* But "discrete, one-time employment events that should have put the [plaintiff] on notice that a cause of action had accrued" do not constitute continuing violations. *Id.* at 1272.

Here, Ms. Mitchell's earliest EEOC charge was filed in December of 2014. The timing of this filing means that several of the events Ms. Mitchell describes in her pleadings—including the 2010 pay reduction, President Cale's failure to meet

with her in 2010, and Mr. Shields' comment published in a newspaper in May of 2013—are not actionable under Title VII.[2]

Ms. Mitchell argued below that she did not become aware of the discriminatory nature of the 2010 pay reduction until 2015. But that contention is contradicted by her own allegations. The operative complaint alleges that in response to the salary reduction, Ms. Mitchell gave the UNA president "over 20 exhibits of documentation showing discrimination and harassment." The complaint also alleges that after Ms. Mitchell lost the appeal of her salary reduction, she knew that "she had to make sure all her decisions and processes were better than her white counterparts." On this record, the magistrate judge did not err in concluding that any Title VII claim based on the salary reduction was time-barred. Moreover, Ms. Mitchell's brief on appeal does not meaningfully address the issue of timeliness. Accordingly, we affirm the dismissal of these claims as untimely.

Turning to the Title VII claims that the magistrate judge dismissed for failure to state a claim, we also affirm. Title VII makes it unlawful for an employer to discriminate against an individual as to the "terms, conditions or privileges of employment" based on the individual's race. 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must

---

[2] The Supreme Court's recent decision in *Fort Bend County v. Davis*, 139 S.Ct. 1843, 1846 (2019) (holding that Title VII's charge-filing requirement is not jurisdictional), does not change the result here because UNA raised the timeliness issue.

generally show that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) the employer treated similarly-situated employees outside the protected class more favorably, and (4) she was qualified to do the job. *See Flowers v. Troup Cnty., Ga. Sch. Distr.*, 803 F.3d 1327, 1335 (11th Cir. 2015). But "not all conduct by an employer negatively affecting an employee constitutes an adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). Rather, "an employee must show *serious and material* change" in her employment conditions. *Id.* at 1239.

None of the events that Ms. Mitchell cites as instances of discrimination amount to an adverse employment action. For example, Ms. Mitchell does not allege that the July 2014 reorganization—in which she was assigned to a new position, reporting to Mr. Shields—reduced her pay or benefits. *See Davis*, 245 F.3d at 1245 (explaining that "a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII[ ]"); *Kidd v. Mando American Corp.*, 731 F.3d 1196, 1203–04 (11th Cir. 2013) (explaining that work reassignments resulting in "a loss of supervisory responsibility," but not a loss of pay or benefits, is generally not an adverse employment action).

Rather, to the extent that the reorganization adversely affected Ms. Mitchell's employment, it was because she had an ongoing conflict with Mr. Shields and did

14

not want to continue working under him. But not being relieved from working for a difficult or conflict-prone boss does not, in and of itself, amount to an adverse employment action. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that Title VII is not "a general civility code") (citation omitted). Moreover, Ms. Mitchell did not allege a similarly-situated comparator for this incident. In fact, Ms. Mitchell's complaint alleges that Mr. Waddell, a white male, was similarly affected by the same July 2014 reorganization.

For the same reason, the magistrate judge did not err in dismissing many of Ms. Mitchell's other allegations of discrimination: (1) the May 2015 meeting at which Mr. Shields allegedly singled out Ms. Mitchell's website for errors—without pointing out similar errors in Mr. Jacques' website; (2) the June 2015 Board of Trustees meeting—specifically, the allegation that prior to that meeting, a report contained a false statement about Ms. Mitchell that was later corrected; (3) UNA's hiring of a mediator to handle the disputes between Ms. Mitchell, Mr. Jacques, and Mr. Shields; (4) her omission from the 2015–2016 UNA catalog; and (5) Mr. Shields' unannounced entry into her office during the August 2016 fire alarm. Again, Ms. Mitchell does not allege that any of these incidents tangibly affected the conditions of her employment. Indeed, other than her 2010 salary reduction, Ms. Mitchell's pleadings do not allege any negative effect on her pay or benefits. We

15

therefore agree with the magistrate judge that these were not adverse employment actions.

Ms. Mitchell's allegations similarly fail to give rise to a Title VII retaliation claim. To bring a Title VII retaliation claim, a plaintiff must allege that she engaged in a statutorily protected activity, that she suffered a materially adverse action, and that some causal relation exists between the protected activity and the adverse action. *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010).

First, few if any of the incidents alleged amount to a materially adverse action. A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and quotation marks omitted). An employee suffers a materially adverse action where, for example, a position is withheld from her that she would otherwise receive, or where she is denied a merit pay increase. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1259 (11th Cir. 2012); *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008). Although a materially adverse action need not concern the terms of a plaintiff's employment, it must rise above a trivial harm, and be enough to dissuade a reasonable worker from making a charge of discrimination. *See Burlington Northern*, 548 U.S. at 68.

16

Here, Ms. Mitchell's allegations generally do not rise to that level.  For example, the 2014 reorganization merely preserved—for three months—the status quo in that Ms. Mitchell continued reporting to Mr. Shields.  And shortly after the reorganization, Ms. Mitchell got the reassignment she wanted, and began working under Mr. Carter.  To be sure, Ms. Mitchell argues that her new position—following the 2017 reorganization—entails fewer opportunities for promotion.  But she has alleged no additional facts in support of this contention.  To the contrary, in her new position her title, pay, benefits, and hours are the same as in her prior role.

Moreover, even if some of the incidents alleged could be seen as materially adverse, Ms. Mitchel's allegations do not show or support an inference that these actions were retaliatory.  The 2014 reorganization, for example, identically affected Mr. Waddell, a white male who is not alleged to have made or supported any charge of discrimination.  Similarly, the 2017 reorganization—however it may affect Ms. Mitchell's prospects for promotion—came about in part because UNA accommodated Ms. Mitchell's objections to working with Mr. Shields. We therefore affirm the magistrate judge's dismissal of Ms. Mitchell's retaliation claims.

## C

Ms. Mitchell also argues that the magistrate judge erred in dismissing her Title VII hostile work environment claims.  To establish a *prima facie* case of a hostile work environment, a plaintiff must show that she belongs to a protected group, that

17

she has been subject to harassment based on that protected characteristic, that the harassment was so severe or pervasive as to alter the terms and conditions of employment and create an abusive environment, and that the employer is responsible for such an environment. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). The severity and pervasiveness of harassment has both a subjective and an objective component: the plaintiff must perceive the harassment as severe and pervasive, and a reasonable person must also find the behavior hostile and abusive. *See id.* at 1276. In evaluating whether a work environment is objectively hostile, we consider several relevant factors, including the frequency of the allegedly hostile conduct, the severity of the conduct, whether the conduct is threatening and humiliating rather than merely offensive, and whether the conduct unreasonably interferes with the plaintiff's job performance. *See Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997).

Here, although Ms. Mitchell's pleadings describe an unpleasant working relationship with Mr. Jacques and Mr. Shields, her hostile work environment claim fails for various reasons. First, as discussed above, she has failed to show that any of the alleged incidents of harassment were based on her race. Indeed, in several of the incidents she describes, her white counterparts were treated identically. *See Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir. 2007) (explaining that Title VII does not prohibit all harassment, but only harassment that

18

discriminates based on a protected category). Second, the incidents that she describes were relatively infrequent, taking place over the course of seven years. Third, none of the incidents involved threats or severe humiliation. On this record, we disagree with Ms. Mitchell that the magistrate judge erred in dismissing her hostile work environment claim.

## IV

Taking the allegations in Ms. Mitchell's pleadings as true, she has described a difficult work environment beset by recurring conflict and mistrust between herself, Mr. Jacques, and Mr. Shields. None of her allegations, however, give rise to the claims she asserts. We therefore affirm the magistrate judge's grant of UNA's motion for judgment on the pleadings.[3]

**AFFIRMED.**

---

[3] We decline UNA's invitation to affirm the magistrate judge's order on the alternative ground that Ms. Mitchell purportedly failed to comply with the rules of pleading. *See* Appellee's Br. at 25–31. "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).